# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARCUS HURDLE, | : | CIVIL NO. 3:20-cv-00605 (KAD) |
| *Petitioner,* | : | |
| | : | |
| v. | : | |
| | : | |
| ROLLIN COOK, *et al* | : | MAY 18, 2020 |
| *Respondents.* | : | |

## DECLARATION OF GAVIN GALLIGAN

I, Gavin Galligan, being duly sworn, declare under penalty of perjury, pursuant to Conn. Gen. Stat. §1-24a, §53a-157b, and 28 U.S.C. §1746 and state:

1. I am over 18 years of age and understand the obligation of an oath.

2. I am employed by the State of Connecticut, Department of Correction (DOC) in the position of Director of the Community Release Unit (CRU).

3. I have held this position since October 1st of 2019. Prior to my appointment to this position, Thomas Hunt served as the Director of the CRU, and I worked in the CRU as a Correctional Counselor Supervisor. My duties included, in part, reviewing individuals incarcerated in DOC who might be eligible for some form of community release under the release discretion of the DOC. I have personal knowledge of the matters stated herein.

4. I have been employed by the DOC since August of 2001. Prior to my appointment as Director of the CRU, I served in various positions within the DOC. During my 18 years of service, I have worked in the positions of: Correctional Officer, Correctional Counselor Trainee, Correctional Counselor and Correctional Counselor Supervisor. In these positions I have gained expertise in classification and risk assessment of inmates.

5.   Community Release provides eligible inmates an opportunity to reintegrate into the community prior to the completion of their sentence. Community Release is discretionary release granted or denied by the designee of the Commissioner of Correction.

6.   There are several different avenues for offenders incarcerated in Connecticut to be released from prison prior to the end of their sentence. Community Release through the CRU is one of those avenues.

7.   Community Release includes transitional supervision, residential program placement, transitional placement, nursing home release, DUI home confinement, re-entry furlough and in some cases dual supervision for cases that are serving Special Parole.

8.   An offender, if eligible, may be released to a variety of different locations after being approved for community release through the CRU. For example, an inmate reviewed for community release could be released to a halfway house, to community supervision with a sponsor such as a family member in the community, a sober house or even to a medical facility.

9.   Alternatively, inmates may, if eligible, also be released prior to their end of sentence to either a halfway house or community supervision by virtue of the parole system under the Board of Pardons and Paroles (BOPP). BOPP review includes but may not be limited to such things as discretionary parole, special parole, medical parole and compassionate parole.

10.  The CRU is not involved in the BOPP parole process. CRU is managed by the DOC, not the BOPP.

2

11.  Parole through the BOPP and community release processes through the CRU are independent mechanisms of release.  The Board of Parole is a separate state agency, with different statutory release mechanisms.

12.  As a result, an offender may, in some cases, be reviewed for both discretionary parole by the BOPP  and community release through CRU. Depending upon the offender's eligibility for parole and/or community release, the offender may be reviewed first for parole, then for community release, or vice versa.

13.  A denial for community release by the CRU does not prevent an offender from discretionary parole eligibility. To my knowledge, a denial for community release does not preclude a grant of discretionary parole.

14.  Conversely, a denial of discretionary parole does not preclude approval for community release through the CRU. They are independent processes, both of which allow an offender to be released to the community through different State Statues and release mechanisms, managed by two different agencies- DOC and BOPP.

15.  Parole eligibility and eligibility for community release are entirely independent.[1]

16.  To the best of my knowledge the Petitioner does not meet any current eligibility criteria for discretionary, medical or compassionate parole; but defer eligibility determination to Connecticut Board of Pardons and Paroles.

17.  Different programs under the umbrella of community release have different eligibility requirements. For example, sentences of two years or less may be eligible for Transitional Supervision, sentences greater than two years may be eligible for Community Release-

---

[1] All references to "community release" hereinafter refer to community release through the DOC's Community Release Unit, and do not include parole release mechanisms.

Halfway House. Sentences specific to convictions under Conn. Gen. Stat. §§ 14-227a, 14-215, 21a-267, 21a-279c and 14-227m may be eligible for release to DUI Home Confinement.

18. Some of the eligibility requirements are set forth in the DOC Classification Manual, DOC A.D. 9.2, Objective Classification and DOC A.D 9.12, Driving Under the Influence Home Confinement Program, attached hereto as **Exhibit A, Exhibit B and Exhibit C.**

19. Once an offender's application is submitted, CRU reviews the application and the director makes a decision on community release for that offender.

20. When reviewing an application for community release, the following factors are taken into consideration: actual eligibility for release, the nature of the instant offense, the offender's criminal history, statements regarding the impact of release to the victim or the victim's family, compliance with the offender accountability plan (OAP), program participation and/or program removal, institutional behavior and/or disciplinary infractions (DRs), history while on supervision of any kind, out of state or federal criminal history (if any), and successes or failures while on supervision.

21. Each offender eligible for review is afforded an individual review before a discretionary decision on the community release application is rendered.

22. With regard to the Petitioner in this lawsuit, I have reviewed records available to me and based on these records I can provide the Court the following information with regard to inmate Hurdle, Marcus #188603.

23. Inmate Hurdle is serving a total effective sentence of 3 years, 6 months for 53a-32 Violation of Probation with an underlying offense of 53a-61 Assault 3rd and 53a-223* Violation of Protective Order under Docket # A22M - CR - 14 - 0086982 – S with an end

of sentence date of 6/22/2022; 3 years 6 months for 53a-32 Violation of Probation with an

underlying offense of 53a-223* Violation of Protective Order under docket # A22M - CR

- 15 - 0158739 – T, with an end of sentence date of 6/22/2022; 3 years, 6 months for 53a-

217C Criminal Possession of a Firearm.

24.   The Petitioner's current end of sentence dates may be subject to change with the loss or

earning of Risk Reduction Earned Credit and so far during this current incarceration the

plaintiff has forfeited 45 days of credit based upon disciplinary issues.

25.   Inmate Hurdle is not only sentenced and serving sentences with the DOC on the

aforementioned dockets, but is also facing charges under 3 dockets with the following

charges; AAN -CR18-0097217-T; 53a-100aa Home Invasion, 53a-134 (a)(4) Robbery 1st

Degree Firearm, 53a-134 Robbery 1st, 53a-217 Criminal Possession of a Firearm and; docket

A22M-CR18-0097218-S with companion docket A22M-MV18-0058594-S; 53a-63 Reckless

Endangerment 1st, 53-167a Interfering with Officer, 14-223 (b)** Engaging Police in Pursuit,

14-222 Reckless Driving.

26.   These pending matters have pending court dates per the CT Judicial Branch website, and those

court dates appear to be currently scheduled for June, 9 2020, in Milford JD and Milford GA

22.

27.   These pending charges have thus assigned the Petitioner a DOC Classification Detainer Risk

Score of a 4 (1 being the lowest, and 4 being the highest) and an Overall Risk Score of a 4 (1

being the lowest and 5 being the highest).

28.   In accordance with DOC policy, the Petitioner is currently ineligible for Department of

Correction Community Release per the 2012 Objective Classification Manual p 21; *"...CT

pending charges either prior to or during their present incarceration, the charge shall be*

*rated on the pending charge/detainer factor. Inmates with this situation will not be eligible for*

*Community Release."*

29.   Also in accordance with Department of Correction policy, the Petitioner is currently ineligible

for DOC Community Release also based upon established eligibility guidelines set forth in the

DOC Classification Manual p 68, *"An offender shall be eligible for transfer to residential*

*work or education program placement when the following criteria are met"*.  Specifically, the

offender fails to meet the following eligibility guidelines:

-   Must be within 18 months of Estimated Release Date, End of Sentence Date or Voted

    to Parole Date.

-   Must not have been found guilty of a Class A disciplinary report within 120 days

    (May be waived at the discretion of the Unit Administrator).  (*The offender has two*

    *disciplinary reports dated 2/5/2020, one for Threats and one for Intoxication*).

-   No pending charges, except for those out of state charges below risk level 4 with

    official documentation that the state will not extradite.

30.  Petitioner is not presently eligible for DOC community release and future eligibility will

be dependent upon the outcome of his 3 pending cases.

31.  Based upon the nature of his pending charges, the offender poses a risk to public safety

and there is no reasonable belief that he would follow any release direction given his long

criminal record, including out of state arrests, history of failures while on supervision in

the community, acts of violence, including domestic violence against his partner whom is

listed in the proposed home plan and weapon related offenses.

32.  Based upon the available criminal record available to me, it appears that Petitioner has 27

arrests in the State of Connecticut and three of these arrests are for the pending charges

noted above.  **Exhibit D**.

33. Records show that Petitioner's first conviction in Connecticut occurred from an arrest in January of 1988, at age 20. Prior to his entry into military service.

34. His criminal record has now spanned a length of over 30 years and is not limited to the State of Connecticut, but also includes convictions in the State of Georgia.

35. He has been coming in and out of DOC custody since 1989, having served 5 prior periods of incarceration before his current sentence. The longest sentence appears to be a term of 90 months under two separate dockets, one being for Larceny 1st and the other for Robbery 1st.

36. He has had numerous failures while on Probation in Connecticut, violations of DOC community release programs, and parole violations. These failures demonstrate the failure to abide by conditions of release in the community and in some instances obey the laws of the State of Connecticut.

37. Time and time again, Petitioner appears that he is unable to follow the law and has committed acts of violence numerous times over the span of his 30 plus year criminal history. Weapons appear to be involved in several of his arrests, including his current conviction under Docket N23N- CR-18-0186768-S.

38. Petitioner's offense history includes convictions for multiple assaults, multiple violations of protective orders, robbery, larceny, burglary, failure to appear, and drug offenses.

39. Petitioner has proposed 2 sponsors, one a past victim of domestic violence. The second sponsor is out of State, and the argument could be made that this is to potentially try to flee prosecution for the crimes that he is facing here in Connecticut.

40. The seriousness of the charges that he is facing, in particular CGS 53a-100aa Home Invasion, may result in a lengthy term of imprisonment.

41. There is no reasonable belief, based upon the offenders' violent history and history of failures in the community while on Probation that Petitioner would comply with any release direction nor "shelter in place" during this global pandemic.

42. Further questions arise as to whether there is statutory authority to release the Petitioner, as the Commissioner and Warden appear to have no statutory authority pertaining to matters of bail / enlargement, as this petition is requesting the Petitioner to be released to.

43. Lastly, ignoring the time remaining on his sentences and the pending matters before the court, would be wholly contrary to best correctional practices, disregards the Judicial process and would endanger the public and victim.

Pursuant to Conn. Gen. Stat. §1-24a, §53a-157b, and 28 U.S.C. §1746, I declare under the pains and penalties of perjury that the foregoing statements are true and accurate to the best of my knowledge and belief.

Gavin Galligan, Director CRU
Department of Correction

# EXHIBIT A
# TO GALLIGAN DECLARATION

| State of Connecticut Department of Correction | Directive Number 9.2 | Effective Date 7/1/2006 | Page 1 of 14 |
|---|---|---|---|
| ADMINISTRATIVE DIRECTIVE | Supersedes Inmate Classification, dated 3/5/2003 | | |
| Approved By *Theresa C. Lantz* | Title Offender Classification | | |

1.  <u>Policy</u>. Each inmate under the custody of the Commissioner of Correction shall be classified to the most appropriate assignment for security and treatment needs to promote effective population management and preparation for release from confinement and supervision. The Department's classification of inmates shall normally utilize a classification instrument based on objective factors. The classification system shall not foster discrimination in status, including housing, programming, job assignment, or on the basis of race, religion, creed, color, or national origin.

2.  <u>Authority and Reference</u>.

    A.  Connecticut General Statutes, Sections 14-227(a), 14-215(c), 18-73,18-81, 18-86, 18-100, 18-100c, 21a-277(d) and 21a-279(e).
    B.  American Correctional Association, Standards for Administration of Correctional Agencies, Second Edition, April 1993, Standards 2-CO-4B-01, 2-CO-4B-03 and 2-CO-4B-04.
    C.  American Correctional Association, Standards for Adult Correctional Institutions, Fourth Edition, January 2003; Standards 4-4286, 4-4295 through 4-4298 and 4-4300 through 4-4305.
    D.  American Correctional Association, Performance-Based Standards for Adult Local Detention Facilities, Fourth Edition, June 2004, Standards 4-ALDF-2A-30 through 4-ALDF-2A-32.
    E.  Administrative Directives, 6.4, Transportation and Community Supervision of Inmates; 6.6, Reporting of Incidents; 6.14, Security Risk Groups; 8.5, Mental Health Services, 9.4, Restrictive Status; 9.5, Code of Penal Discipline; and 9.8, Furloughs.

3.  <u>Definitions</u>. For the purposes stated herein, the following definitions apply:

    A.  <u>Classification</u>. The ongoing process of collecting and evaluating information about each inmate to determine the inmate's risk and need level for appropriate confinement location, treatment, programs, and employment assignment whether in a facility or the community.
    B.  <u>Commitment</u>. The status of an inmate when legal custody is maintained by the Department of Correction. Custody may be in a correctional institution or the community.
    C.  <u>Community Release Program</u>. A correctional program based in the community for eligible inmates, which includes transitional supervision and residential program placement.
    D.  <u>Newly Admitted Inmate</u>. An accused, convicted or sentenced inmate who enters the Department of Correction under a new period of commitment. If an inmate has not left the custody of the Department prior to re-admittance, the inmate shall not be treated as newly admitted. For the purposes of this directive, an inmate admitted as a temporary surrender shall not be considered a newly admitted inmate.

| Directive Number 9.2 | Effective Date 7/1/2006 | Page 2 of 14 |
|---|---|---|
| Title | Offender Classification | |

    E.    <u>Override</u>. A documented condition of fact warranting an increase or decrease in the overall risk level of an inmate.

4.    <u>Classification Goals</u>. The goals of the Department's classification system are to:

    A.    ensure the safety and well being of the community, facility, staff and the inmate.

    B.    apply a consistent and reliable classification and assessment system that assigns inmates a level of confinement consistent with the protection of the community, staff, and inmates.

    C.    recommend inmate programs and activities according to specific needs.

    D.    involve the staff and the inmate in developing an incarceration plan and a plan for community release and reintegration, where appropriate.

    E.    develop, record and analyze data necessary for individual decision making and program and facility planning.

    F.    ensure that staff and inmates understand the procedures and criteria used in the classification process.

5.    <u>Classification Management</u>. The Director of Offender Classification and Population Management shall be responsible for the Department of Correction's classification system. The Director of Offender Classification and Population Management shall develop a classification manual containing detailed information concerning offender classification procedures which shall be reviewed annually and updated as necessary. The Unit Administrator shall be responsible for administering the classification procedures under this Directive. However, nothing in this Directive shall preclude the Director of Offender Classification and Population Management, the Director of the Programs and Treatment Division, a Deputy Commissioner or the Commissioner from intervening in any classification decision at any time. The Director of Offender Classification and Population Management shall be responsible for an annual audit to determine compliance with the Department's classification directives and manual.

6.    <u>Classification Levels</u>. Each inmate shall be classified according to risk and needs, and shall be assigned an overall risk score of one (1) to five (5). A risk score level 1 shall represent the lowest security level and 5 the highest. A needs score level 1 shall represent the lowest need level and 5 the highest.

7.    <u>Admissions and Assessment</u>.

    A.    <u>MacDougall-Walker Correctional Institution</u>. Any male inmate 18 years of age or older and sentenced to greater than two (2) years shall normally be admitted to MacDougall-Walker Correctional Institution. Risk and comprehensive needs assessment shall be completed over a period of 10 business days. Upon completion of the classification assessment, the inmate shall be transferred to an appropriate facility.

    B.    <u>Direct Admission Facilities</u>. Any male inmate in pretrial status or sentenced to two (2) years or less shall be admitted to the direct admission facility serving the court of jurisdiction (i.e., Hartford, Bridgeport, New Haven or Corrigan-Radgowski

| Directive Number<br>9.2 | Effective Date<br>7/1/2006 | Page 3 of 14 |
|---|---|---|
| Title | Offender Classification | |

Correctional Centers). Risk and needs assessments shall be completed in accordance with Section 8 of this Directive.

C.   <u>York Correctional Institution</u>. Any sentenced and/or pretrial female inmate shall be admitted to York Correctional Institution. Risk and needs assessments shall be completed as required in Section 8 of this Directive.

D.   <u>Manson Youth Institution</u>. Any sentenced and/or pretrial male inmate age 14-17 shall be directly admitted to Manson Youth Institution. Risk and needs assessments shall be completed as required in Section 8 of this Directive.

E.   <u>Juvenile Offenders (ages 14 and 15)</u>. Manson Youth Institution shall house all male juvenile offenders and York Correctional Institution shall house all female juvenile offenders. No other facility shall knowingly accept a juvenile offender. Any facility receiving an offender in this category shall immediately report the admission to the Offender Classification and Population Management Unit. The receiving facility shall also make an immediate psychiatric referral to ensure that qualified staff evaluate the offender as soon as possible upon admission in accordance with Administrative Directive 8.5, Mental Health Services. In addition, the receiving facility shall place the juvenile in Administrative Detention and make an immediate request for priority transfer to Manson Youth Institution as appropriate. Whenever possible, prior to transfer, facility classification staff shall complete, at a minimum, an initial risk assessment. Both Manson Youth Institution and York Correctional Institution shall develop Unit Directives that provide for the unique orientation, housing, and program needs of the juvenile offender.

8.   <u>Classification Assessment</u>. Offender classification assessments shall be based upon the individual risk and needs of the inmate.

A.   <u>Risk Assessment</u>. An inmate's risk assessment shall represent the inmate's potential for violence, escape, or disruption of the orderly functioning of a facility or other place of confinement. The level of risk is determined by rating the following factors:

1.   History of escape;
2.   Severity/violence of the current offense;
3.   History of violence;
4.   Length of sentence;
5.   Presence of pending charges, bond amount and/or detainers;
6.   Discipline history; and,
7.   Security Risk Group membership.

B.   <u>Inmate Needs Assessment</u>. An inmate's needs shall be assessed in the following areas:

1.   Medical and health care;
2.   Mental health care;
3.   Education;
4.   Vocational training and work skills;
5.   Substance abuse treatment;
6.   Sex offender treatment; and,
7.   Community resources.

| Directive Number 9.2 | Effective Date 7/1/2006 | Page 4 of 14 |
|---|---|---|
| Title | Offender Classification | |

Assessment of inmate needs shall be accomplished by classification staff in conjunction with staff responsible for the evaluation and provision of services for the need area.

C. <u>Overall Risk Score</u>. An overall classification assessment score shall be determined for each inmate. An overall risk score is determined by the highest rating assigned to any of the seven (7) factors outlined in section 8(A) of this Directive, with the exception of the sex offender treatment need score in Section 8(B) of this Directive. No inmate with a sex offender treatment need score of 2 or greater shall be assigned an overall score below level 3 without authorization from the Commissioner or designee. The overall score shall be assigned taking into account the inmate's risk assessments and behavior during confinement.

D. <u>Overrides</u>. An overall risk score may be increased or decreased through an override. An override of the inmate's overall risk score shall be documented in writing and approved by the Unit Administrator in consultation with the Director of Offender Classification and Population Management or designee. An override shall not be used to decrease an inmate's risk level score more than once during any term of continuous sentenced incarceration. No inmate shall be overridden to level 1.

9. <u>Initial Classification Review</u>. A preliminary classification risk assessment shall begin within the first two (2) business days of commitment. A preliminary risk classification shall be determined prior to transfer to a level 3 or higher risk level confinement. Full initial classification shall be completed prior to any transfer to any level 2 facility. Within 14 days of commitment to the Department, the initial overall risk score shall be assigned. Within 30 days, the needs assessment and full initial classification shall be completed.

10. <u>Reclassification Review</u>. After initial classification, the inmate's risk level and needs shall be regularly reviewed or immediately following any change in an inmate's status that may affect the risk score as follows:

A. <u>Regular Reclassification</u>. An inmate's risk and needs shall be reviewed every six (6) months after the initial classification has been established with the exception of the following:

1. annually for level 3 and 4 general population inmates with greater than five (5) years remaining on their sentence; and,

2. inmates currently in the custody of the Department being held solely for federal authorities, to include inmates held for the United States Department of Homeland Security (Bureau of Immigration and Customs Enforcement), with no pending Connecticut charges, and no Connecticut sentence to serve, need only to have a regular review conducted annually.

B. <u>Risk Level Reductions</u>. A reduction of the inmate's risk level shall be reviewed as follows:

1. <u>Reduction from Overall Risk Level 5</u>. All inmates assigned to overall risk level 5 will be assigned to Administrative Segregation. Inmates approved for removal from

| Directive Number 9.2 | Effective Date 7/1/2006 | Page 5 of 14 |
|---|---|---|
| Title | Offender Classification | |

Administrative Segregation as per Administrative Directive 9.4, Restrictive Status, shall be reduced to the appropriate overall risk level 4 status. Any inmate assigned to Administrative Segregation shall not have the risk level reduced without the approval of the Commissioner or designee. Any inmate assigned to risk level 5 shall be reviewed at a minimum, annually for regular review or upon completion of the Administrative Segregation Phase Program.

2.   Reductions from Risk Level 4 to 3 and Risk Level 3 to 2. Reductions of risk level shall be considered after a sentenced inmate has completed a prescribed amount of time in confinement as noted below. Any inmate serving a life sentence with no possibility of parole or release is not eligible for a risk level decrease without the review and approval of the Director of Offender Classification and Population Management. The percentage of time served for determinate sentences shall be computed on the estimated release date for offenses committed prior to October 1, 1994, and on the maximum release date for offenses committed on or after October 1, 1994. The percentage of time served for indeterminate sentences shall be computed based on the projected discharge date. Parole status shall only be considered when a firm Voted to Parole (VTP) Date has been granted by the Board of Pardons and Paroles, at which time the VTP Date may be considered the release date for percentage of time calculations. Any inmate serving a sentence for a sex related offense or having a history of sex related offenses shall be approved by the Commissioner or designee prior to being classified below risk level 3. If not approved, the reason for a denial of a routine level reduction shall be documented on the Offender Classification Form (OCF). The schedule for risk level reductions and eligibility criteria for these reductions shall be as follows:

a.   Level 4 to 3. Inmates must serve 35% of their time since their last risk score change and must be free from Class A disciplinary action for the preceding 120 days and Class B disciplinary action for the preceding 90 days.

b.   Level 3 to 2. Inmates must serve 30% of their time since their last risk score change and must be free from Class A disciplinary action for the preceding 120 days and Class B disciplinary action for the preceding 90 days.

Once an inmate meets the eligibility criteria above, a risk level reduction review shall be completed.

An overall level 4 inmate with more than fifteen (15) years left to serve on a sentence shall not be reduced to an overall level 3 without consulting with the Director of Offender Classification and Population Management or designee. An overall level 3 inmate with more than seven (7) years left to serve on a sentence shall not be reduced to an overall level 2 without consulting with the Director of

| Directive Number 9.2 | Effective Date 7/1/2006 | Page 6 of 14 |
|---|---|---|
| Title | Offender Classification | |

Offender Classification and Population Management or designee.

3. <u>Reduction to Risk Level 1</u>. Reduction to risk level 1 shall be in accordance with Section 11 of this Directive.

4. <u>Reduction Based on New Information</u>. Receipt of new information regarding the inmate may also require a classification review and a risk level reduction. A reduction may be prompted for one of the following reasons:

   a. A reduction of charges against the inmate;
   b. A removal of a detainer;
   c. Sentence modification and reduction of sentence;
   d. Reduction in bond; and/or
   e. Successful Security Risk Group Renunciation.

5. <u>Reduction Exclusion Based on Assignment Refusal</u>. A sentenced inmate who refuses to participate in an available educational or programmatic assignment, consistent with assessed needs in accordance with Section 8(B) of this Directive, may be precluded from a classification reduction until the inmate complies with a mandatory classification program assignment as identified in the Program Index Compendium.

6. <u>Disciplinary History Factor Reduction</u>. During an initial assessment, an inmate's discipline history factor shall be reviewed to determine whether or not any change is warranted. If the inmate has not been found guilty of a class A or B disciplinary violation in accordance with Administrative Directive 9.5, Code of Penal Discipline for one (1) year, (six (6) months for inmates under 16 years of age), a reduction of one (1) level may be made to this factor.

11. <u>Community Release Programs</u>. The community release program shall provide an eligible inmate with the opportunity to reintegrate into the community. Any inmate who refuses to participate in an available educational or program assignment, consistent with the inmate's assessed needs in accordance with Section 8(B) of this Directive, may be excluded from community transfer consideration until the inmate complies with the classification assignment. A member of a Security Risk Group in accordance with Administrative Directive 6.14, Security Risk Groups, shall be excluded from community transfer consideration. Program placement may include Transitional Supervision or Residential Program Placement as follows:

A. <u>Transitional Supervision</u>.

1. <u>Eligibility Criteria</u>. An inmate incarcerated by the Department of Correction for a definite total effective sentence of two (2) years or less shall, subject to the following criteria, be eligible for consideration for Transitional Supervision. The two (2) years maximum sentence shall include any unpaid fine calculated consecutively at the daily cost of incarceration per day. In addition, the following criteria must be met:

| Directive Number 9.2 | Effective Date 7/1/2006 | Page 7 of 14 |
|---|---|---|
| Title | Offender Classification | |

a.  Be classified below level 5;
b.  Served at least 50 percent of the sentence imposed less jail credit on the controlling sentence;
c.  Must not be serving the mandatory portion of Driving While Intoxicated, Section 14-227(a) of the Connecticut General Statutes or a Driving under Suspension offense that originally was related to a Driving while Intoxicated, Section 14-215(c) sentence of the Connecticut General Statutes;
d.  Favorable recommendations for inmates with a sex offense treatment need score greater than 1 shall be forwarded to the Director of Offender Classification and Population Management for review and approval in consultation with appropriate Mental Health staff;
e.  Favorable recommendations for inmates with mental health need scores greater than three (3) shall be forwarded to the Director of Health and Addiction Services for review to further ensure continuity of care;
f.  Remain discipline free of a class A offense during the preceding 120 days;
g.  Remain discipline free of a class B offense during the preceding 60 days;
h.  Remain escape free from any community release program, to include absconding from parole, during the preceding 120 days, may be waived at the discretion of the Unit Administrator;
i.  Have no pending charges or detainers unless bond has been posted, except pending out of state charges below risk level 4 with official verification that the state will not extradite;
j.  Not designated as a Security Risk Group member; and,
k.  Have an approved sponsor and/or have secured housing at an acceptable residence approved by Parole and Community Services.

Class A and B disciplinary reports may be waived at the discretion of the Unit Administrator.

2.  Eligibility Date and Notification. Within two (2) weeks of sentencing, unit classification staff shall determine the date that an eligible inmate may be placed on Transitional Supervision. When an inmate is not recommended for placement on Transitional Supervision at the facility level, the Transitional Supervision package shall be forwarded to the appropriate District Administrator for review. The District Administrator, who may consult with the Director of Offender Classification and Population Management regarding the suitability of placement, shall review the package and either uphold or overturn the decision and establish a placement date. If a placement date is established, the District Administrator shall notify the Unit Administrator of the facility housing the inmate and the Parole and Community Services Unit. The Unit Administrator shall then inform the inmate of the placement date.

| Directive Number 9.2 | Effective Date 7/1/2006 | Page 8 of 14 |
|---|---|---|
| Title | Offender Classification | |

3.   <u>Risk Level</u>. Upon approval for Transitional Supervision an inmate shall be classified to overall risk level 1.

B.   <u>Residential Program Placement</u>.

1.   <u>Eligibility Criteria</u>. An inmate may be eligible for transfer to a residential work or education program when the following criteria are met:

a.   Be classified level 2 or 3;

b.   Be within 18 months of estimated discharge date or Voted to Parole date;

c.   Must not be serving the mandatory portion of Driving While Intoxicated, Section 14-227(a) of the Connecticut General Statutes or a Driving under Suspension offense that originally was related to a Driving while Intoxicated, Section 14-215(c) sentence of the Connecticut General Statutes;

d.   Remain discipline free of a Class A offense during the preceding 120 days;

e.   Remain discipline free of a Class B offense during the preceding 60 days;

f.   Have no return from escape, to include absconding from parole, within the past six (6) months (may be waived at the discretion of the Unit Administrator);

g.   Remain free of community release program failure during the preceding 120 days;

h.   Have no pending charges or detainers unless bond has been posted except pending out of state charges below risk level 4 with official verification that the state will not extradite;

i.   Met the requirements for participation in job opportunities, employment preparation, educational placement or substance abuse training and education;

j.   Must not be a designated Security Risk Group member;

k.   Favorable recommendations for inmates with a sex offense treatment need score greater than 1 shall be forwarded to the Director of Offender Classification and Population Management for review and approval in consultation with appropriate Mental Health staff; and,

l.   Must submit to felony DNA requirements, if applicable.

Class A and B disciplinary reports may be waived at the discretion of the Unit Administrator.

2.   <u>Risk Level</u>. Upon approval for residential program placement an inmate shall be classified to overall risk level 1.

C.   <u>Pretrial Supervision</u>.

1.   <u>Eligibility Criteria</u>. A pretrial offender shall be eligible for pretrial supervision when the following criteria are met:

| Directive Number 9.2 | Effective Date 7/1/2006 | Page 9 of 14 |
|---|---|---|
| Title | Offender Classification | |

a. Pretrial confinement for no offense other than class D felony or misdemeanor. The following class D felonies are excluded from consideration:

    1. 53a-60a, Assault in the second degree with a firearm;
    2. 53a-60b, Assault on a victim 60 or older, second degree;
    3. 53a-60c, Assault on a victim 60 or older, with a firearm;
    4. 53a-60d, Assault in the second degree, with a motor vehicle;
    5. 53a-72a, Sexual Assault in the third degree;
    6. 53a-73a, Sexual Assault in the fourth degree; and,
    7. 53-181c, Stalking in the first degree;

b. No community release violation during the preceding 120 days, may be waived at the Unit Administrator's discretion;
c. Must not have been found guilty of a Class A disciplinary report within 120 days, may be waived at the Unit Administrator's discretion;
d. Must not have been found guilty of a Class B disciplinary report within 60 days, may be waived at the Unit Administrator's discretion;
e. No escape or absconder status within the past 6 months; and,
f. Favorable recommendations for inmates with mental health need scores greater than 3 shall be forwarded to the Director of Health and Addiction Services for approval and to further ensure continuity of care.

Upon approval, an offender shall be classified to overall risk level one (1).

2. <u>Supervision Level for Pretrial Offenders</u>. Any pretrial offender assigned to overall risk level one (1) shall be supervised by electronic monitoring or any other monitoring technology or services while on pretrial supervision. A pretrial release agreement shall specify that the inmate must:

a. not change residence without prior approval of the supervising officer;
b. appear for all court appearances as required;
c. participate in substance abuse programming if required by the Department; and,
d. participate in any other conditions imposed by the Department.

12. <u>Risk Level Increases</u>. Risk level increases shall occur as required upon receipt of new information pertinent to the inmate's risk classification or inmate's disciplinary adjustment.

| Directive Number 9.2 | Effective Date 7/1/2006 | Page 10 of 14 |
|---|---|---|
| Title | Offender Classification | |

A.   <u>Disciplinary Increases</u>. Poor disciplinary adjustment may result in an inmate's Overall Risk Factor being increased and a corresponding increase of the Discipline History Factor to the level of the Overall according to the schedule detailed in the Classification Manual.

An inmate who is found guilty of a level 2 assault on a Department of Correction employee as defined in Administrative Directive 6.6, Reporting of Incidents, shall be classified to overall risk level 4 with a corresponding increase in the Discipline Risk Factor.

In the event of multiple disciplinary charges arising from a single disciplinary incident, only the highest chargeable class of offense shall be used.

An inmate assigned to Close Custody for Chronic Discipline shall automatically be classified to Overall and Discipline Risk Factor 4.

Reviews resulting in an overall risk level increase which will require a transfer to another facility shall require the approval of the Director of Offender Classification and Population Management.

B.   <u>Conviction of a Felony</u>.  Conviction of a felony committed while incarcerated shall result in a level increase review.

C.   <u>Assignment to Overall Risk Level 5/Administrative Segregation</u>. Assignment to Overall Risk Level 5/Administrative Segregation shall be considered when any totality of facts, information or circumstances which indicates an immediate threat to safety and/or security of the public, staff or other inmates. An inmate shall be automatically placed in Administrative Detention and be reviewed for placement on Overall Risk Level 5/Administrative Segregation, under any of the following conditions:

1.   Level 1 assault on a Department of Correction employee as defined in Administrative Directive 6.6, Reporting of Incidents;
2.   Hostage holding of a Department of Correction Employee;
3.   Riot;
4.   Homicide while confined;
5.   An inmate is sentenced to death;
6.   Escape from the security perimeter of a facility;
7.   Continues to present a threat to safety, security and/or orderly operation after one (1) year in Close Custody for Security Risk Groups;
8.   Continues to present a threat to safety security and/or orderly operation after six (6) months in Close Custody for Chronic Discipline; and,
9.   An inmate is in pretrial or pre-sentence status for a Capital Felony Murder charge.

All increases to Overall Risk Level 5/Administrative Segregation shall be made by the Director of Offender Classification and Population Management.

| Directive Number 9.2 | Effective Date 7/1/2006 | Page 11 of 14 |
|---|---|---|
| Title | Offender Classification | |

     D.   <u>Security Risk Group Members</u>. Any inmate designated as a Security Risk Group Member shall not be classified lower than overall risk level 3 and placed in a Close Monitoring unit in accordance with Administrative Directive 6.14, Security Risk Groups. An inmate released from the Department while designated as a Security Risk Group Member shall be readmitted on the same status. The Director of Security shall review the designation in accordance with Administrative Directive 6.14, Security Risk Groups.

     E.   <u>Security Risk Group Safety Threat Members</u>. Any inmate designated as a Security Risk Group Safety Threat Member shall be classified to overall risk level 4 and placed in a Close Custody unit in accordance with Administrative Directive 6.14, Security Risk Groups. An inmate released from the Department while designated as a Security Risk Group Safety Threat Member shall be readmitted on the same status. The Director of Security shall review the designation in accordance with Administrative Directive 6.14, Security Risk Groups.

13.   <u>Risk Level Reclassification from Community Placement</u>. Risk level increases from overall risk level 1 for inmates remanded to custody and whose community transfer has been revoked, requires a risk reclassification hearing. Also, the parole supervisor shall provide the inmate with the following:

     A.   Within 72 hours of the re-incarceration, a statement of reasons for the proposed increase from risk level 1 status except those that may cause a security problem or undue harm to the public;

     B.   A copy of any documents pertaining to such statement of reasons unless the security of the facility and public warrants otherwise.

     C.   A notification of the date, time, and location of a hearing on such proposed revocation. This notice shall state that the inmate may appear at such hearing with a correctional advocate as a representative and present documents at such hearing on the inmate's behalf.

        Any inmate in community placement status and returned to a level 2 or higher security facility shall have a classification hearing within 14 days of return to the facility. This time limit may be extended for cause. A disciplinary hearing shall not substitute for a classification hearing. A classification hearing shall not consider disciplinary matters unless the inmate has been found guilty of an offense under Administrative Directive 9.5, Code of Penal Discipline. A classification hearing may consider reclassification for a non-chargeable matter and return the inmate to a higher security facility prior to a disciplinary hearing on a chargeable offense. Classification shall not be used to avoid a disciplinary hearing for an inmate. Records of the disciplinary hearing, including information provided by the inmate, shall be forwarded to the counselor supervisor or higher authority as appropriate. If the inmate's assignment to risk level 1 is revoked, the counselor supervisor or higher authority shall state the reasons in writing and change the risk level. The risk score will be increased to overall risk level 2, except in the case where new information would result in a level increase due to a change in one of the risk factors.

| Directive Number 9.2 | Effective Date 7/1/2006 | Page 12 of 14 |
|---|---|---|
| Title | Offender Classification | |

D.    Not withstanding the above provisions, this criterion shall not interfere with the use of discretion invoking incremental sanctions by a parole officer or higher authority for technical, non-criminal violations to include, but not be limited to intervention, increased programming, detoxification and electronic monitoring through the Community Release Intervention Program as enumerated below:

1.    When necessary, inmates shall be temporarily remanded to custody by the Parole and Community Services Unit. All remands to custody shall be documented on CN 9202, Offender Classification History Form and placed in the inmate's master file;

2.    No classification transaction shall be required, unless it has been determined that the inmate will not be placed back into the community;

3.    Classification staff shall notify Addiction Services when an inmate is returned for a positive urinalysis so as to provide necessary intervention;

4.    The Parole and Community Services Unit shall review and track each case and make necessary modifications to the inmate's conditions of release for reinstatement into the community; and,

5.    If it is determined by the Unit Administrator, in consultation with the Director of Parole and Community Services, that the inmate is not appropriate for re-release, the inmate shall then be scheduled for a reclassification hearing and reviewed for an overall level increase as appropriate and considered for a transfer to a sentenced facility if the inmate has greater than 15 days to discharge.

14.    <u>Risk Level Reclassification Resulting from New Information</u>. Whenever new information is received that is relevant to an inmate's risk or needs classification, a reclassification review shall occur.

15.    <u>Inmate Involvement</u>. An inmate should be involved in program decisions to the extent feasible. The inmate shall be seen by classification staff for every objective classification action except Percentage-of-Time Reviews unless the inmate is denied. The inmate may appear before the classification staff as required by this Directive, as long as the appearance does not jeopardize the safety and security of the facility, staff, or other inmates. If an appearance of the inmate is required, the inmate shall receive notice 48 hours prior to classification review. An inmate may waive, in writing, the notice requirement or any appearance. Within five (5) days of a classification decision, the decision, including the overall risk score and need ratings assigned the inmate as well as any changes of these ratings shall be shared with the inmate in writing. A classification decision may be appealed to the Unit Administrator or designee within 15 days of the decision.

16.    <u>Level of Review Required for Classification Reviews</u>. The Unit Administrator shall designate staff within the unit responsible for classification reviews and assignments. With the exception of classification assignments made by the Director of Offender Classification and Population Management, classification decisions may

| Directive Number 9.2 | Effective Date 7/1/2006 | Page 13 of 14 |
|---|---|---|
| Title | | |
| Offender Classification | | |

be appealed to the Unit Administrator. The Unit Administrator shall respond in writing within 15 business days of receipt of the appeal.

17.   Inmate Supervision Requirements. Supervision requirements during transport shall be in accordance with Administrative Directive 6.4, Transportation and Community Supervision of Inmates. All other inmate supervision outside the facility's perimeter with the exception of Administrative Directive 9.8, Furloughs, shall be governed by an inmate's risk level in accordance with the following:

    A.   An inmate classified as level 3, 4 or 5 shall be excluded from a job or program assignment that is outside the facility's security perimeter. Any security classification level 3, 4 or 5 inmate, who is to be moved beyond the facility's security perimeter, shall be managed in accordance with Administrative Directive 6.4, Transportation and Community Supervision of Inmates.

    B.   Any inmate who is placed on facility-based outside clearance, shall be intermittently observed by a Department of Correction employee at a minimum of once every hour or continuous if deemed appropriate by the Unit Administrator or designee.

    C.   An inmate placed on a community service work detail shall be intermittently observed by an approved trained agent of the municipality or other state agency at a minimum of every 15 minutes, or continuously if deemed appropriate by the Unit Administrator or designee. Additional stipulations and supervision requirements shall be pursuant to the provisions of Administrative Directive 10.5, Public Service Work, and enumerated in a Memorandum of Understanding between the Department of Correction and the requesting town, municipality or state agency.

18.   Other Classification Actions.

    A.   Outside Work Assignments. The Unit Administrator shall be the approving authority for any inmate placed on facility-based outside clearance, community service work detail, or work or education release. Prior to authorization to participate in the above listed programs, a review of the inmate's special management information and any discretionary release denial or return within the past 30 days (if any), shall be conducted to determine the inmate's suitability for such programming. Authorization to participate shall be based on the following minimum eligibility criteria utilizing CN 9201, Outside Work Assignment Application:

        1.   Risk level 1 or 2;
        2.   No sex offender treatment score greater than a 1;
        3.   No level 4 convictions, past or current offense;
        4.   Mental Health and Medical need scores less than 3 unless cleared by Health Services;
        5.   Within 36 months of end of sentence or voted to parole date;
        6.   No return from escape within 1 year;
        7.   No Class A disciplinary reports within 120 days and no Class B disciplinary reports within 60 days;
        8.   No detainer score greater than a 1; and,
        9.   No history of classification as an overall risk level 5.

| Directive Number<br>9.2 | Effective Date<br>7/1/2006 | Page 14 of 14 |
|---|---|---|
| Title | Offender Classification | |

Any inmate already approved or being considered for outside clearance who has been denied or has returned from any discretionary release program such as community release or parole within the last 30 days, shall be evaluated by the Unit Administrator to assess the appropriateness of an outside work assignment.

Any inmate already approved for outside clearance that has received a disciplinary report or has been involved in any incident shall also be evaluated by the Unit Administrator for continued placement on outside clearance.

B.   Indeterminate Sentences. The Commissioner may release any inmate sentenced to an indeterminate sentence pursuant to Sections 21a-277(d) or 21a-279(e) of the Connecticut General Statutes, at any point during that sentence. The Unit Administrator may recommend release at any time during the sentence. Only favorable recommendations shall be forwarded to the Commissioner's Office via the Director of Offender Classification and Population Management. The initial review shall be made after the completion of initial classification and a 30-day period of confinement. If denied, the Unit Administrator shall set another review date not more than six (6) months from the decision date. Each review and disposition shall be documented on CN 9202, Offender Classification History Form in Section 5 of the inmate's master file.

19.   Forms and Attachments. The following forms are applicable to this Administrative Directive and shall be utilized for the intended function.

A.   CN 9201, Outside Work Assignment Application; and,
B.   CN 9202, Offender Classification History Form.

20.   Exceptions. Any exceptions to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.

# EXHIBIT B
# TO GALLIGAN DECLARATION

| | State of Connecticut<br>Department of Correction | Directive Number<br>9.12 | Effective Date<br>9/30/2011 | Page 1 of 2 |
|---|---|---|---|---|
| | ADMINISTRATIVE<br>DIRECTIVE | Supersedes | New Directive | |
| Approved By<br>*Leo C. Cimore* | | Title<br>Driving Under the Influence Home Confinement<br>Program | | |

1.  <u>Policy</u>. The Department shall supervise certain offenders convicted of driving under the influence or driving under suspension in a home residence.  Such offenders shall be fully assessed prior to a release from incarceration.

2.  <u>Authority and Reference</u>.

    A.  Connecticut General Statutes, Sections 14-215, 14-227a, 18-78a, and 18-81.
    B.  Public Act 11-51, Section 26
    C.  23 U.S.C. Section 164

3.  <u>Definitions</u>.

    A.  <u>Continuous Monitoring for Alcohol Consumption</u>. Automatically testing breath, blood or transdermal alcohol concentration levels and tamper attempts at least once every hour regardless of the location of the inmate being monitored.

4.  <u>General Provision</u>. An inmate sentenced to a period of incarceration in accordance with Connecticut General Statutes, Section 14-215or 14-227a(g) may be classified to home confinement at the discretion of the Unit Administrator after a mandatory period of at least ten (10) days. The offender may be subject to electronic monitoring, which may include the use of a global positioning system and continuous monitoring for alcohol consumption, and to any other conditions the Unit Administrator deems appropriate.

5.  <u>Assessment</u>. No inmate shall be classified to Home Confinement until fully assessed in accordance with guidelines issued by the Director of Programs and Treatment or designee.

6.  <u>Mandatory Assessment Time</u>. An inmate must serve at least ten (10) full calendar days in a correctional facility prior to being classified to the community.  These ten days shall constitute a mandatory assessment period, which shall include, but not be limited to, mandatory assessment of alcohol use and/or abuse.

7.  <u>Supervision</u>. An inmate shall be supervised by the Parole and Community Services Unit while on Home Confinement status. An inmate who violates the conditions of the program may have his release revoked and may be confined to a correctional facility.

8.  <u>Advisory Committee</u>. At the direction of the Commissioner, an advisory committee shall be established for the purpose of developing a protocol for the training of correctional staff assigned to the assessment and supervision of offenders eligible for Home Confinement pursuant to this directive, evaluation of outcomes of this release status, the establishment of victim impact panels, and the provision of treatment to inmate participants.

| Directive Number | Effective Date | Page 2 of 2 |
|---|---|---|
| 9.12 | 9/30/2011 | |
| Title | | |
| Driving Under the Influence Home Confinement Program | | |

9.   <u>Exceptions</u>. Any exceptions to the procedures in this Administrative
     Directive shall require prior written approval from the Commissioner.

# EXHIBIT C
# TO GALLIGAN DECLARATION

**SECTION I: PURPOSE OF THE MANUAL**

**Department of Correction Mission Statement:** The Department of Correction shall protect the public, protect staff, and provide safe, secure and humane supervision of offenders with opportunities that support restitution, rehabilitation and successful community reintegration.

This manual explains the State of Connecticut Department of Correction inmate classification system and procedures for usage of the classification instrument.

This manual is a reference tool developed to assist classification staff in performing classification actions. Specifically, it will assist staff to:

Understand the goals and objectives of classification;

Improve the system of classifying and assigning inmates;

Provide for more appropriate classification decision-making;

Use the classification system to the advantage of the Department, inmates under the custody of the Department, and the general public;

Standardize classification on an agency-wide basis.

Educate and explain the rationale and need for a classification system; and

Develop an Offender Accountability Plan, which will hold offenders accountable for addressing their custodial and treatment needs, which will assist in eventual successful re-entry to the community.

The manual will be updated as the need arises to reflect current Department policies and procedures.

Section II of this manual presents an overview of classification, and specifically the classification system employed by the Connecticut State Department of Correction. The purpose of Section II is to acquaint persons who do not normally deal with classification issues on a daily basis with the Department's philosophy regarding classification, general classification procedures, and the rationale behind classification.

The Director of Offender Classification and Population Management is responsible for the contents of the manual. Interpretation and clarification may be requested through the Population Management Office. Occasionally these requests may be required to be submitted in writing to: Offender Classification & Population Management, 1153 East Street South, Suffield, CT 06080, attention Population Management Supervisor.

**SECTION II: CLASSIFICATION SYSTEM GOALS AND OBJECTIVES**

Classification is the ongoing process of collecting and evaluating information about each inmate to determine the inmate's risk and need level for appropriate confinement location, treatment, programs, and employment assignment whether in a facility or the community.

Classification is utilized in conjunction with the Department's Offender Accountability Plan, which identifies and provides specific treatment and custodial needs, to assist offenders in developing the necessary skills for successful re-entry to the community.

The Department of Correction's classification system is centrally managed by the Director of Offender Classification and Population Management and locally managed at the facility level by the Unit Administrator. The term "Unit Administrator" refers to the person in charge of a correctional institution, correctional center, pre-release center, or community service region.  The term "facility" refers to any place of correctional confinement, and encompasses correctional institutions, correctional centers, community release programs, and other correctional units maintaining custody of inmates.

The system is based upon objective principles and criteria designed to reduce arbitrary or inconsistent decisions.  Classification decisions should balance inmate, departmental, and public interest while preparing inmates for their reintegration to society.  The classification system shall not be used to discriminate, based on race, creed, color, or national origin.

**The goals of the Department's classification system are to:**

    A.  Enhance the safety and well being of the community, facility, staff and the inmate.

    B.  Apply a consistent and reliable classification and assessment system that assigns inmates to a level of confinement consistent with the protection of the community, facility, staff, and inmates.

    C.  Recommend inmate programs and activities according to specific needs.

    D.  Involve the staff and the inmate in developing an incarceration plan and a plan for community release and reintegration, where appropriate.

    E.  Develop, record, and analyze data necessary for individual decision making and program and facility planning.

    F.  Facilitate staff and inmates' understanding of the procedures and criteria used in the classification process.

The classification system is designed to objectively assess an inmate's security, custody, and treatment needs. The objective classification system is used by facilities for all inmates regardless of legal status or sentence length. The classification ratings track an individual throughout the term of commitment.

**SECTION II – CLASSIFICATION GOALS AND OBJECTIVES**

The system is intended to provide for scheduled reviews for security and custody changes and transfers among facilities and programs. Classification is used to best match the individual characteristics of the inmate with the facilities and programs of the Department of Correction. An information base is also established which aids planning and resource allocation.

The objective classification system is based on an inmate's risk and treatment needs. An inmate's Overall Risk Level is determined by the following factors:

1. Escape Profile;
2. Severity/Violence of the current offense;
3. History of Violence;
4. Length of sentence;
5. Presence of pending charges and/or detainers;
6. Discipline history; and
7. Security Risk Group membership.

After independently rating each of these factors, an overall Risk Level is established. Risk Levels primarily reflect the structural constraints or security required to house the inmate.

Inmate needs are assessed in seven areas: Medical, Mental Health, Education, Vocational and Work Skills, Substance Abuse, Sex Treatment Need, and Family/Residence/Community Resources. For each of the inmate needs, the level of need for treatment or training is evaluated. Inmate needs and treatment responses for each area are developed by the respective professionals working in the field.

The overall classification profile of the inmate will determine the appropriate facility assignment, supervisory approach, housing assignment, accessibility to the community, and program or job placement. Although the objective classification instrument may not determine the specific facility, housing, or program assignment, the ratings will determine eligibility for these assignments and in most cases effectively place the inmate in the best available location. Although the individual assessment of the inmate is independent of resource availability, the optimal matching of individual characteristics with resources is sought.

As an inmate progresses through the commitment period, individual behavior is monitored as well as the time remaining on the sentence. A regular schedule of annual and semi-annual reclassification reviews will examine the present level of risk and current inmate needs. Classification levels are dynamic. Through reclassification, risk and need levels are monitored and modified as required.

## SECTION III: INITIAL CLASSIFICATION PROCEDURES

### A.    INTRODUCTION

Initial classification shall be performed each time an inmate is "newly admitted" to the Department of Correction. A "newly admitted" inmate is an accused, convicted or sentenced inmate who enters the Department of Correction under a new period of commitment. If a Connecticut inmate has not left the custody of the Department of Correction or the Connecticut Board of Pardons and Paroles, prior to re-admittance, the inmate shall not be treated as newly admitted. An inmate readmitted to the Department of Correction from Probation supervision or Special Parole supervision will be classified as a newly admitted inmate.

An inmate who was discharged or paroled from Administrative Segregation, Chronic Discipline, Special Needs or Protective Custody shall be re-admitted in that status and reviewed within fifteen days of readmission for the appropriateness of continuation in that status. The appropriate placement/approval form shall be forwarded, with the Unit Administrator's recommendation to the Director of Offender Classification and Population Management. If an inmate is recommended for continued placement on Administrative Segregation or Special Needs status, a review hearing will be conducted by OCPM. Inmates that discharged as designated Security Risk Group Threat Members or Security Risk Group members, shall be returned to the same status in accordance with Administrative Directive 6.14, 'Security Risk Groups'.

Initial classification shall establish an initial Risk Level and identify inmate needs. Within fourteen days of admission, the following information required to complete the initial classification (IN) shall be gathered: Connecticut criminal history, Out of state criminal history, Pending charges, Presence of detainers, Wanted persons check.

Within fourteen days of the offender's being partially or fully sentenced, an initial Offender Accountability Plan shall be established in accordance with the Offender Accountability Plan Manual.

**All classification transactions shall be documented on the Department of Correction 'Classification Review Sheet' (Attachment C-7) and filed in Section 5 of the Inmate Master File. A copy of the C-7 shall be given to the inmate. If the inmate declines a copy of the C-7, it shall be noted on the C-7. For community release and reentry furlough decisions, a 'Community Release Program Cover Sheet' (Attachment C-1 ) will be used for notification to the inmate. 'The Classification Review Sheet' shall be utilized for Initial Classification, Reclassification and Institutional Classification actions. All Classification actions, including re-entry furlough approvals shall be documented on the CN9202, 'Offender Classification History Form'.**
*Institutional Classification actions are defined as any internal assignment changing an inmate's status within a facility to include program, school, job, outside clearance or other.

No stand-alone charge for which the offender has been found not guilty or the charge nolled,

## SECTION III – INITIAL CLASSIFICATION PROCEDURES

or dismissed, shall be used to determine any risk or needs score.  If a charge for which the offender was found not guilty or the charge nolled, dismissed or resulted in an acquittal was included as one of multiple charges leading to a conviction as a result of a trial, plea bargain and/or guilty plea, information as to the charges not resulting in a conviction on at least one of the multiple charges may be used to determine any risk or needs score.

The following shall not be used to determine risk scores:
1.  Multiple charges on one docket that are all nolled, dismissed, withdrawn or dropped.
2.  All charges on a single docket for which the offender was found not guilty or acquitted of, nolled, dismissed, withdrawn or dropped.

*Note-  No information obtained from the Judicial Electronic Bridge (JEB) relative to a Juvenile or Youthful Offender which did not result a sentenced period of incarceration with the CTDOC may be utilized to determine any risk or need score while incarcerated in the CTDOC, except for information to assist in determining medical and mental health scores, unless specifically authorized by the Commissioner.

**Information from charges which were nolled, acquitted, dismissed, withdrawn or dropped,** which is of a crime resulting in a conviction, may be used to determine needs scores based upon the description of the crime from police reports, Pre-Sentence Investigations (PSI's), or other reliable investigative reports.

**Information from charges which were nolled, acquitted, dismissed, withdrawn or dropped,** which is from a stand-alone offense (crime in which no conviction was obtained) cannot be used to determine risk or needs scores.

**If an offense that an inmate is sentenced for was substituted for another charge,** information regarding the original charge may be used in determining risk and needs scores.

**Non-conviction Information:**  Refer to page 37 for sex treatment need scores based on non-conviction information.

Once this information is gathered and reviewed, the initial Overall Risk level shall be assigned. **Within fourteen days of admission, an inmate needs assessment shall be completed.**  The assignment of the initial Overall Risk level and inmate needs assessment (IN) completes the full initial classification.

## SECTION III – INITIAL CLASSIFICATION PROCEDURES

### Eight areas will be scored using the Initial Classification Form.

| AREA | CODE | STAFF RESPONSIBLE |
|---|---|---|
| Risk | R | Classification Staff |
| Medical & Health Care Need | M | Medical Specialist |
| Mental Health Care Need | MH | Classification Staff/Mental Health Specialist |
| Education Need | E | Classification Staff/Education Staff |
| Substance Abuse Treatment Need | T | Addiction Services Staff |
| Vocational Training/Work Skills | V | Classification Staff/Vocational Needs/Educational Specialist |
| Sexual Offense Treatment Need | S | Classification Staff/Mental Health Specialist |
| Community Resource Need | C | Classification Staff |

**B.      INMATE RISK LEVEL ASSESSMENT**

An inmate's Overall Risk Level represents the inmate's need for external and internal physical and structural security as provided by the Department's facilities.

Initially, seven factors will be considered in determining an inmate's Overall Risk Level:

1.      Escape Profile  (**E**)
2.      Severity/Violence of Current Offense  (**S**)
3.      History of Violence  (**V**)
4.      Length of Sentence  (**L**)
5.      Presence of Pending Charges and/or Detainers  (**D**)
6.      Discipline History (**B**)
7.      Security Risk Group Membership (**R**)

Each factor will be assigned a rating, one being the least risk and five being the highest risk.
When rating each individual factor, the concept of aggravating and mitigating circumstances is to be considered. Aggravating circumstances are those which indicate that there was a condition, or conditions, pertaining to a factor that increases the seriousness of the factor based upon some behavior or action demonstrated by the inmate. Mitigating circumstances are those that reduce the seriousness of the factor again, based upon some behavior or action carried out by the inmate. Aggravating and mitigating circumstances may only change a factor by one level. In no case will an individual factor be aggravated to a level 5.

## SECTION III – INITIAL CLASSIFICATION PROCEDURES

## INITIAL CLASSIFICATION  (IN)

As part of the initial Classification assessment, an overall risk score shall be established within two business days of admission and prior to any transfer between facilities. Each factor for which information is available shall be rated to determine the overall risk score. The overall risk score is used to determine the inmate's most appropriate level of confinement. Within fourteen days of admission, full Initial Classification must be completed. All information required to complete the rating of the seven risk factors shall be gathered. The information required shall include Connecticut criminal history, out of state criminal history, pending charges, presence of pending charges and detainers, and wanted person check. All seven needs factors shall also be established. Full Initial Classification shall be completed prior to transfer to any level two facility.

## ASSIGNMENT OF OVERALL RISK LEVEL

The inmate's Overall Risk Level is determined by the highest rating assigned to any of the seven factors, except that assignment to Overall Risk Level 5 shall require the approval of the Director of Offender Classification and Population Management and placement into Administrative Segregation. For example, if an inmate has a 2 on every factor except for one, on which the inmate has a 4, the overall Risk Level would be 4. The same guideline applies to an inmate who receives multiple ratings at the highest level scored. For example, if an inmate has three ratings at the 2 level, and two ratings at the 3 level, the Overall Risk Level would be 3.

Any inmate serving a sentence for a sex related offense or having a history of sex related offenses or sex treatment need score greater than 1 shall be approved by the Commissioner or designee prior to being classified below Overall Risk Level 3. No inmate with a sex treatment need score of 2 or greater shall be assigned an overall score below level 3 without approval from the Commissioner or designee.

Any inmate designated as a verified Security Risk Group member shall not be classified lower than Overall Risk Level 3 as long as the inmate remains so designated.

Inmates serving an out of state sentence (CUSCOM) must initially be classified an overall level 4. Written facility recommendations for change, approved by the Unit Administrator or Designee, shall be sent to the Interstate Compact Supervisor or Designee. These recommendations should take into account, Length of Confinement, Disciplinary History and Percentage of time served in the other jurisdiction. Recommendations will be forwarded by the Interstate Compact Office to the other jurisdiction for final approval.

## SECTION III – INITIAL CLASSIFICATION PROCEDURES

## SPECIAL PAROLE

**Special Parole is a term of supervision and is not a continuation of an inmate's sentence.**

### 1.  Special Parole Violator with Pending Charges

Special Parole violators readmitted with pending charges shall be classified based on the Detainer Risk Score or on the Length of Confinement Risk Score, if the length of confinement of Special Parole exceeds the severity of the current pending charge.

### 2.  Special Parole Violator without Pending Charges

For Special Parole violators readmitted without new charges, their Classification Overall Risk Score shall be determined by the time remaining on Special Parole.

### 3.  Special Parole Violator/Restrictive Status

Special Parole Violators previously discharged from a restrictive status shall be reviewed for continued restrictive status placement and the overall level shall reflect prior restrictive status placement.

Special Parole violators with a sex treatment need score greater than 1 shall not be classified below Overall level 3 without approval of the Commissioner/designee.

### 1.  ESCAPE PROFILE

The escape profile is one of the most important factors making up an inmate's Overall Risk Level. In determining the likelihood of whether an inmate may escape, the primary focus will be on the inmate's escape record, with particular emphasis on the recency of the escape or attempted escape, the severity of the escape (e.g., whether anybody was injured during the course of the escape), the number of such escapes, and the existence of any aggravating or mitigating circumstances.  In addition, any other pertinent information related to the determination of escape risk may be used in making this decision.  All escapes or attempted escapes shall be included in the escape profile. An inmate with an escape history of any kind will never have an escape risk score less than two (2). An inmate with no escape history shall receive an escape score of one (1).

Definitions:

**MODERATE:** An escape/attempted escape from a program or custody operation (e.g. police, community corrections program, furlough, work release, absconding parole or special parole, or assignment outside of a correctional institution) where restraints are not required and does not involve any actual or threat of violence.

## SECTION III – INITIAL CLASSIFICATION PROCEDURES

**SERIOUS:** An escape/attempted escape from a correctional institution with or without threat of violence. Also includes escape/attempted escape from a program or custody operation with actual or threat of violence and escapes outside a correctional institution while in restraints.

**ESCAPE FROM COURT/TRANSPORTS:** An inmate within the custody of the Department of Correction who escapes from a courthouse or from the custody of the Judicial Marshals, US Marshals, DOC transport or other law enforcement officials or their agents and is apprehended will be assigned an escape risk factor 5.

**ESCAPE FROM LEVEL FOUR OR FIVE FACILITY:** An inmate who escapes from a level 4 or 5 facility will be assigned an escape risk factor 5.

### AGGRAVATING CIRCUMSTANCES

Example: Commission of a felony while in escape status may increase rating one level.

### MITIGATING CIRCUMSTANCES

Example: Turning oneself into authorities (verified) may decrease rating one level.

| Escape Ratings Table | | | |
|---|---|---|---|
| Rating | Greater than or equal to 5 years | Greater than 2 years and less than 5 years | Less than or equal to 2 years |
| Moderate | 2 | 2 | 3 |
| Serious | 2 | 3 | 4 |
| Escape-Level 4 or 5 facility | * | 4 | 5 |

* refer to Director of OCPM for appropriate Risk Score.

The time frame for the calculation of years for escape shall be from the date of the escape return. Attempted escape calculations shall be from the date of the attempt. The escape factor will only be calculated upon return to custody and shall not change during the current period of incarceration unless due to another escape or attempted escape.

### 2.  SEVERITY/VIOLENCE OF CURRENT OFFENSE

This factor is based on two major issues, the severity of the current offense and the level of violence involved. A current offense is defined as any offense remanding the inmate to the custody of the

**SECTION III – INITIAL CLASSIFICATION PROCEDURES**

DOC for the present committal, any offense pending before the court, and any offense resulting in concurrent, and/or consecutive sentences (this includes any guilty finding during the current incarceration which may result in no incarcerated time: ex. Conditional Discharge, Probation Termination, etc.). Violence is defined as the propensity of an inmate to kill, harm, injure, or in some manner threaten the well being of another individual. A 4 rated offense is more serious than 3, 2, or 1 rated offenses and shall receive a higher risk score.

In completing this factor, the Seriousness of Offense Ratings Table that follows shall be employed. Should the inmate be confined for an offense such as violation of probation, criminal attempt, conspiracy, criminal liability for another, or youthful offender, the original offense shall be rated. If the inmate has pending charges, the severity of these charges shall be rated. If an inmate is serving a sentence from another jurisdiction, either consecutive or concurrent to his Connecticut incarceration, these charges shall be equated to Connecticut charges. The severity of the most serious (highest rated) charge (pending or with sentence) shall be used to determine the severity/violence score. Special Parole Violators returned with no new charges shall have a severity of violence score of 1. **Violent offenses are denoted by bold lettering.**

<div align="center">

## Connecticut Department of Correction
### Seriousness of Offense Ratings Table

</div>

**LEVEL 4**

Any of the following offenses may result in death or serious physical injury except for offenses with a motor vehicle (e.g. vehicular homicide). Included is any offense in which there is an attempt to inflict serious physical injury. Serious physical injury is defined as physical injury that creates a substantial risk of death, or causes disfigurement, serious impairment of health or loss or impairment of the function of any body organ.

| | | |
|---|---|---|
| 53-9 | **Murder** | **F** |
| 53-10 | **First Degree Murder, other homicides** | **F** |
| 53-21 | **Injury or Risk of Injury to a Minor \*\*** | **F** |
| 53a-45 | **Murder** | **AF** |
| 53a-54 | **Murder** | **AF** |
| 53a-54a | **Murder** | **AF** |
| 53a-54b | **Capital Felony** | **AF** |
| 53a-54c | **Felony Murder** | **AF** |
| 53a-54d | **Arson Murder** | **AF** |
| 53a-55 | **Manslaughter, First Degree** | **BF** |
| 53a-55a | **Manslaughter, First Degree w/Firearm** | **BF** |
| 53a-56 | **Manslaughter, Second Degree** | **CF** |
| 53a-56a | **Manslaughter, Second Degree w/Firearm** | **CF** |
| 53a-59 | **Assault, First Degree** | **BF** |
| 53a-59a | **Assault, First Degree on Victim 60 or older** | **BF** |
| 53a-59b | **Assault, of an Employee of DOC in the 1st Degree** | **BF** |
| 53a-60a | **Assault, Second Degree w/Firearm** | **DF** |
| 53a-60c | **Assault, Second Degree on Victim 60 or older w/Firearm** | **DF** |

## SECTION III – INITIAL CLASSIFICATION PROCEDURES

Level 4 offenses continued…

| | | |
|---|---|---|
| 53a-64aa | **Strangulation, First Degree** | CF |
| 53a-70 | **Sexual Assault, First Degree** | BF |
| 53a-70a | **Sexual Assault, First Degree w/Deadly Weapon** | BF |
| 53a-70b | **Sexual Assault, In a Spousal or Cohabitating Relationship** | BF |
| 53a-71 | **Sexual Assault, Second Degree** | CF |
| 53a-72 | **Rape, First Degree** | BF |
| 53a-72b | **Sexual Assault, Third Degree w/Firearm** | DF |
| 53a-73 | **Rape, Second Degree** | CF |
| 53a-74 | **Rape, Second Degree** | CF |
| 53a-92 | **Kidnapping, First Degree** | AF |
| 53a-92a | **Kidnapping, First Degree w/Firearm** | AF |
| 53a-94a | **Kidnapping, Second Degree w/Firearm** | BF |
| 53a-100aa(a)(1) | **Home Invasion Felony While Home** | AF |
| 53a-100aa(a)(2) | **Home Invasion Dangerous Weapon/Explosive** | AF |
| 53a-101 | **Burglary, First Degree** | BF |
| 53a-101(a)(3) | **Burglary, First Degree At Night** | BF |
| 53a-111 | **Arson, First Degree** | AF |
| 53a-134 | **Robbery, First Degree** | BF |
| 53a-167c | **Assault on Personnel** | CF |
| 53a-167d | **Assault of a Prosecutor** | CF |
| 53a-169 | Escape, First Degree * | CF |
| 53a-174a | **Possession of a Weapon in a Correctional Institution** | BF |
| 53a-179b | **Rioting in a Correctional Institution** | BF |
| 53a-179c | **Inciting to Riot at a Correctional Institution** | CF |
| 53-247(b)* | **Cruelty to Animals/Intentionally Wound/Kill Animal** | UF |
| 54-158 | Fugitive from Justice *** | M |
| 54-169 | Arrest Warrant of Judge*** | |
| 54-170 | Arrest without Warrant *** | |

\*       If the escape is rated as moderate and there were no aggravating circumstances, then the Severity/Violence of current offense rating would be a level 3.

\*\*      Risk of injury is a level 4 offense if sexual in nature.

\*\*\*     As soon as the underlying charge is known - reclassify as appropriate.

## LEVEL 3
Any of the following offenses (Generally, these offenses result in serious or moderate injury but are a lesser degree felony than level 4).

| | | |
|---|---|---|
| 53-21 | **Injury or Risk of Injury to Minor \*** | F |
| 53-80a | **Manufacture of Bombs** | BF |
| 53a-60 | **Assault, Second Degree** | DF |
| 53a-60b | **Assault, Second Degree, on a Victim 60 or older** | DF |
| 53a-61aa | **Threatening, First Degree** | DF |
| 53a-64bb | **Strangulation, Second Degree** | DF |
| 53a-72a | **Sexual Assault, Third Degree** | DF |
| 53a-073a | **Sexual Assault, Fourth Degree** | DF |

## SECTION III – INITIAL CLASSIFICATION PROCEDURES

Level 3 offenses continued…

| | | |
|---|---|---|
| **53a-86** | **Promoting Prostitution, First Degree** | **BF** |
| 53a-90a | Enticing a Minor | AM |
| **53a-94** | **Kidnapping, Second Degree** | **BF** |
| **53a-95** | **Unlawful Restraint, First Degree** | **DF** |
| **53a-102a** | **Burglary, Second Degree, w/Firearm** | **CF** |
| **53a-112** | **Arson, Second Degree** | **BF** |
| **53a-135** | **Robbery, Second Degree** | **CF** |
| **53a-136a** | **Robbery by Carjacking** | **DF** |
| 53a-169 | Escape, First Degree (if from Community Release with no aggravating circumstances) | CF |
| 53a-170 | Escape, Second Degree | DF |
| 53a-171 | Escape from Custody | AM |
| **53a-175** | **Riot, First degree** | **AM** |
| **53a-178** | **Incite to riot** | **AM** |
| **53a-179a** | **Inciting injury to persons or property** | **CF** |
| **53a-181c** | **Stalking, First degree** | **DF** |
| **53a-181d** | **Stalking, Second degree** | **AM** |
| **53a-182b** | **Harassment, First degree** | **DF** |
| 53a-196a | Employing a minor in obscene performance | AF |
| **53a-217e(b)** | **Negligent Hunting First Degree** | **DF** |
| **53a-217e(c)** | **Negligent Hunting Second Degree** | **AM** |
| **53a-223** | **Criminal Violation of Protective Order** | **AM** |
| **53a-223a** | **Criminal Violation of a Standing Criminal Restraining Order** | **DF** |
| **53a-223b** | **Criminal Violation of a Restraining Order** | **AM** |
| 53a-301 | Computer crime in furtherance of terrorist purposes | BF |
| 53a-303 | Contaminating public water supply or food supply for terrorist purposes | CF |
| 53a-304 | Damage to public transportation property for terrorist purposes | CF |
| **53a-321** | **Abuse, First degree** | **CF** |

*May not be violent if no sexual, physical, emotional, or personal trauma occurred. If offense is known to be of a sexual nature, it shall be classified at level 4.

## LEVEL 2
Any of the following offenses (Generally, these offenses include threat of injury or result in minor physical injury, motor vehicle offenses resulting in injury or death, and sale of narcotics or controlled drugs):

| | | |
|---|---|---|
| **14-222a** | **Negligent homicide, with motor vehicle** | **BM** |
| **15-140L** | **Reckless Boating First Degree resulting in injury or death** | **UF** |
| **15-401l** | **Negligent Boating** | **CF** |
| 19-480 | Manufacture/Sale of Narcotic or a Controlled Drug | F |
| 19-480(a) | Sale of Heroin/Cocaine by Non-Drug Dependent Person | F |
| 19-480(b) | Sale of Narcotic/Amphetamine by Non-Drug Dependent Person | F |
| 21a-245 | Manufacture, Sale, Administering of restricted substances, regulated | F |
| 21a-277(a) | Sale of Hallucinogen/Narcotic Substance | F |
| 21a-277(b) | Sale of Controlled Substance | F |

**SECTION III – INITIAL CLASSIFICATION PROCEDURES**
Level 2 offenses continued…

| | | |
|---|---|---|
| 21a-277(c) | Operation of a Drug Factory | F |
| 21a-278(a) | Sale of Heroin/Cocaine by Non-Drug Dependent Person | F |
| 21a-278(b) | Sale of Narcotic/Amphetamine by Non-Drug Dependent Person | F |
| 21a-278a | Penalty for Illegal Distribution/Sale of Prescription Drugs | F |
| 29-348 | Illegal Possession of Explosives | F |
| **53-20** | **Cruelty to Persons** | **M** |
| 53-21a(a) | Leaving Child Unsupervised in Motor Vehicle | AM |
| 53-23 | Abandonment of a Child under age 6 | F |
| **53-202** | **Machine guns** | |
| **53-202b** | **Sale or Transfer of an Assault Weapon** | **CF** |
| **53-202c** | **Possession of an Assault Weapon** | **DF** |
| **53-202b** | **Sale or Transfer of Assault Weapon(s) Prohibited** | **CF** |
| **53-202c** | **Possession of Assault Weapon Prohibited** | **DF** |
| **53-202j** | **Commission of a Class A, B, or C Felony with an Assault Weapon** | **F** |
| **53-202k** | **Commission of a Class A,B or C Felony with a Firearm** | **F** |
| **53-206** | **Carrying or Sale of Dangerous Weapon(s)** | **F** |
| **53-206c** | **Sale or Carrying of Facsimile Firearms** | **BM** |
| **53-247** | **Cruelty to Animals** | **UF** |
| 53-395 | Prohibitive Activities - Racketeering | U |
| **53a-56b** | **Manslaughter, Second Degree w/Motor Vehicle while Intoxicated** | **CF** |
| **53a-57** | **Misconduct with a Motor Vehicle** | **DF** |
| **53a-58** | **Negligent Homicide** | **AM** |
| **53a-60d** | **Assault, Second Degree w/Motor Vehicle while Intoxicated** | **DF** |
| **53a-61** | **Assault, Third Degree** | **AM** |
| **53a-61a** | **Assault, Third Degree, Victim over 59** | **AM** |
| **53a-62** | **Threatening- Second Degree** | **AM** |
| **53a-63** | **Reckless Endangerment, First Degree** | **AM** |
| **53a-64cc** | **Strangulation, Third Degree** | **AM** |
| 53a-87 | Promoting Prostitution, Second Degree | CF |
| **53a-102** | **Burglary, Second Degree** | **CF** |
| **53a-103a** | **Burglary, Third Degree, w/ Firearm** | **DF** |
| **53a-113** | **Arson, Third Degree** | **CF** |
| 53a-129b | Identity Theft, First Degree | BF |
| **53a-136** | **Robbery, Third Degree** | **DF** |
| **53a-151a** | **Intimidating a Witness** | **CF** |
| 53a-167a | Interfering with an Officer | M |
| 53a-171a | Aiding Escape from a Hospital or Sanatorium | AM |
| 53a-174 | Convey Unauthorized Items into Institution | DF |
| 53a-174b | Conveying/Using Electrical Wireless Device in a CI | AM |
| **53a-176** | **Riot, Second Degree** | **BM** |
| 53a-180a | False Reporting Causing Injury or Death | DF |
| 53a-180aa | Breach of Peace First Degree (listed in JIS as 53a-1801) | DF |
| 53a-181b | Intimidation Based on Bigotry or Bias | DF |
| **53a-181e** | **Stalking, Third Degree** | **BM** |
| **53a-181j** | **Intimidation based on bigotry or bias in the first degree** | **CF** |
| **53a-181k** | **Intimidation based on bigotry or bias in the second degree** | **DF** |
| **53a-181l** | **Intimidation based on bigotry or bias in the third degree** | **AM** |
| **53a-183** | **Harassment Second Degree** | **CM** |
| 53a-186 | Public Indecency | BM |

**SECTION III – INITIAL CLASSIFICATION PROCEDURES**

Level 2 offenses continued...

| | | |
|---|---|---|
| 53a-189a | Voyeurism | DF |
| 53a-189a | Dissemination of Voyeuristic Material | DF |
| 53a-192 | Coercion | DF/AM |
| 53a-196b | Promoting a Minor in an Obscene Performance | BF |
| 53a-196c | Importing child pornography | BF |
| 53a-196d | Possession of Child pornography, First Degree | BF |
| 53a-196e | Possession of Child Pornography, Second Degree | CF |
| 53a-196f | Possession of Child Pornography, Third Degree | DF |
| **53a-211** | **Possession of Shotgun or Silencer** | **DF** |
| **53a-216** | **Criminal Use of Firearm or Electronic Device** | **DF** |
| **53a-217** | **Criminal Possession of a Firearm or Electronic Device** | **DF** |
| 53a-217a | Criminally Negligent Storage of a Firearm | DF |
| **53a-217b** | **Possession of a Weapon on School Grounds** | **DF** |
| **53a-217c** | **Criminal Possession of a Pistol** | **DF** |
| **53a-217d** | **Criminal Possession of Body Armor** | **AM** |
| 53-217e(d) | Negligent Hunting Third Degree | BM |
| 53-217e(e) | Negligent Hunting Fourth Degree | CM |
| 53a-302 | Criminal Misrepresentation | CF |
| **53a-322** | **Abuse, Second Degree** | **DF** |
| 54-33d | Interference with Search | M |

**LEVEL 1**
Any of the following offenses (Generally, these offenses do not involve violence.)
Effective July 2009, Judicial classified CGS 14 Statutes as either V=Violation, I=Infraction,
X=Unclassified:  Refer to JIS for proper identification.

| | | |
|---|---|---|
| 7-148** | Town Ordinance >$250 violation | V |
| 14-18 | Failure to Display Plates/Stickers | I |
| 14-99GG | Illegal Operation MV w/out tint inspection | I |
| 14-147(c) | Improper Use of Marker, License, Registration | X |
| 14-215 | Operating Under Suspended License or Registration | X |
| 14-215(c) | Operating Under Suspended License or Registration | X |
| 14-222 | Reckless Driving | X |
| 14-223(a) | Failure to stop when signaled/disobeying an Officer | I |
| 14-224(a)* | Evading Responsibility | X |
| 14-227a | Operating Under Influence of Liquor or Drugs | X |
| 14-227k(a)(2) | Illegal Operation MV w/out ignition device | CM |
| 14-253a | Failure to Comply w/Handicap Parking Regulations | V |
| 19-481 | Illegal Possession of Narcotics or Controlled Drug(s) | F |
| 19-481a | Possession of Narcotics | F |
| 19-481b | Possession of Hallucinogen | F |
| 19-481c | Illegal Possession of Narcotics or Drug | F |
| 19-481d | Drug-Related | F |
| 20-102 | Penalty (Unlawful Practice of Nursing) | U |
| 20-417E | Violation New Home Construction Regs. | U |
| 20-427(b) | Prohibited Acts Building Permits | AM |
| 21a-246 | License to Manufacture, Wholesale, Supply, Compound, etc. | U |

# SECTION III – INITIAL CLASSIFICATION PROCEDURES

Level 1 offenses continued…

| | | |
|---|---|---|
| 21a-266 | Prohibited Acts | F |
| 21a-267 | Prohibited Acts Involving Drug Paraphernalia | CM |
| 21a-268 | Misrepresentation of a Substance as a Controlled Substance | DF |
| 21a-279(a) | Possession of Narcotics | F |
| 21a-279(b) | Possession of Hallucinogen or 4 or more oz of Marijuana | F |
| 21a-279(c) | Possession of less than 4 oz of Marijuana or a Controlled Substance | M |
| 21a-279(d) | Alternate Penalty for Drug Possession | F |
| 22a-208c | Handling Solid Waste w/out Permit | UM |
| 22a-226b | Violation Solid Management Waste Regs. Result. in Imminent Danger | UF |
| 22a-252 | Illegal Disposal of Asbestos | UM |
| 29-28 | Permit to Sell or Carry a Pistol | M |
| 29-33 | Selling Weapons to Aliens Prohibited | DF |
| 29-35 | Carrying a Weapons without a Permit | F |
| 29-36 | Illegal Alteration of Firearm ID | F |
| 29-38 | Carrying a Weapon in a Motor Vehicle | F |
| 30-86 | Liquor Sales to Minors | M |
| 31-71g | Violation of Payment of Wages | U |
| 31-273 | Penalties, Recovery of Overpayment | U |
| 51-33 | Contempt of Court | M |
| 53-170 | Refusal to Disperse | I |
| 53-203 | Unlawful Discharge of Firearm | M |
| 53-205 | Shotguns and Rifles in a Vehicle | M |
| 53-304 | Non-Support | M |
| **53a-64** | **Reckless Endangerment, Second Degree** | **BM** |
| 53a-81 | Adultery | AM |
| 53a-82 | Prostitution | AM |
| 53a-83 | Patronizing a Prostitute | AM |
| 53a-83a | Patronizing a Prostitute from a MV | AM |
| 53a-88 | Promoting Prostitution, Third Degree | DF |
| 53a-89 | Permitting Prostitution | AM |
| **53a-096** | **Unlawful Restraint, Second Degree** | **AM** |
| 53a-97 | Custodial Interference, First Degree | DF |
| 53a-99 | Substitution of Children | DF |
| 53a-103 | Burglary, Third Degree | DF |
| 53a-106 | Manufacture or Possession of Burglary Tools | AM |
| 53a-107 | Criminal Trespassing, First Degree | AM |
| 53a-108 | Criminal Trespass, Second Degree | BM |
| 53a-109 | Criminal Trespass, Third Degree | CM |
| 53a-110a | Simple Trespass | M |
| 53a-114 | Reckless Burning | DF |
| 53a-115 | Criminal Mischief, First Degree | DF |
| 53a-116 | Criminal Mischief, Second Degree | AM |
| 53a-117 | Criminal Mischief, Third Degree | BM |
| 53a-119 | Larceny-Defined | M |
| 53a-119a | Shoplifting and Library Theft | M |
| 53a-119b | Using Motor Vehicle without Permission | AM/DF |
| 53a-122 | Larceny, First Degree | BF |
| 53a-123 | Larceny, Second Degree | CF |

## SECTION III – INITIAL CLASSIFICATION PROCEDURES

Level 1 offenses continued…

| | | |
|---|---|---|
| 53a-124 | Larceny, Third Degree | DF |
| 53a-125 | Larceny, Fourth Degree | AM |
| 53a-125a | Larceny, Fifth Degree | BM |
| 53a-125b | Larceny, Sixth Degree | CM |
| 53a-126 | Receiving Stolen Property, Larceny | M |
| 53a-126a | Criminal Trover, First Degree | DF |
| 53a-126b | Criminal Trover, Second Degree | AM |
| 53a-127 | Divert from State Benefits of Labor Employees | AM |
| 53a-127a | Unlawful Entry into Coin Machine | AM |
| 53a-127b | Fraudulent Use of Automated Change Machine | CM |
| 53a-127c | Theft of Utility Service for Profit | DF |
| 53a-127d | Cheating at Gambling | DF |
| 53a-127e | Possession of a Cheating Device | DF |
| 53a-127f | Possession of a Shoplifting Device | AM |
| 53a-128 | Issuing a Bad Check | AM |
| 53a-128b | False Statement to Procure Issuance or Credit Card | M |
| 53a-128c | Credit Card Theft | AM |
| 53a-128d | Illegal Use of Credit Card | AM |
| 53a-128e | Illegal Furnishing: Money, Goods or Credit Cards | M |
| 53a-128f | Unlawful Reproduction of Credit Card | DF |
| 53a-128g | Illegal Gain from Credit Card | AM |
| 53a-129 | Misapplication of Property | AM |
| 53a-129c | Identity Theft, Second Degree | CF |
| 53a-129d | Identity Theft, Third Degree | DF |
| 53a-129e | Trafficking in Personal Identifying Information | DF |
| 53a-130 | Criminal Impersonation | BM |
| 53a-130a | Impersonation of a Police Officer | DF |
| 53a-131 | Unlawful Concealment of Will | AM |
| 53a-132 | False Entry by Officer or Public Agent | AM |
| 53a-138 | Forgery, First Degree | CF |
| 53a-139 | Forgery, Second Degree | DF |
| 53a-140 | Forgery, Third Degree | BM |
| 53a-141 | Criminal Simulation | DF |
| 53a-142 | Forgery of Symbols | AM |
| 53a-144 | Unlawfully Using Slugs, First Degree | BM |
| 53a-145 | Using Slugs, Second Degree | CM |
| 53a-147 | Bribery | DF |
| 53a-148 | Bribe Receiving | DF |
| 53a-149 | Bribery of Witness | DF |
| 53a-150 | Bribes Receipt by a Witness | DF |
| 53a-151 | Tampering with Witness | DF |
| 53a-152 | Bribery of a Jury | CF |
| 53a-153 | Bribe Receiving by a Juror | CF |
| 53a-154 | Tampering with Juror | DF |
| 53a-155 | Tampering with or Fabricating Evidence | DF |
| 53a-156 | Perjury | DF |
| 53a-157 | False Statement | AM |
| 53a-158 | Bribery of a Labor Official | DF |

# SECTION III – INITIAL CLASSIFICATION PROCEDURES

Level 1 offenses continued…

| | | |
|---|---|---|
| 53a-159 | Bribe Received by Labor Officials | DF |
| 53a-160 | Commercial Bribery | AM |
| 53a-161 | Receiving Commercial Bribe | AM |
| 53a-161a | Bid Rigging | DF |
| 53a-161b | Disclosure of Bid Proposal | AM |
| 53a-161c | Receiving Kickbacks | DF |
| 53a-162 | Rigging Sport Event | DF |
| 53a-163 | Soliciting or Accepting Benefit for Rigging | AM |
| 53a-164 | Participating in Rigged Contest | AM |
| 53a-165aa | Hindering Prosecution, First Degree | CF |
| 53a-166 | Hindering Prosecution, Second Degree | CF |
| 53a-167 | Hindering Prosecution, Third Degree | DF |
| 53a-167b | Failure to Assist a Peace Officer/Fireman | AM |
| 53a-172 | Failure to Appear, First Degree | DF |
| 53a-173 | Failure to Appear, Second Degree | AM |
| 53a-177 | Unlawful Assembly | BM |
| 53a-179 | Criminal Advocacy | DF |
| 53a-180 | Falsely Reporting Incident | AM |
| 53a-180a | Falsely Reporting Incident Resulting in Injury | DF |
| 53a-181 | Breach of Peace Second Degree | BM |
| 53a-181a | Creating a Public Disturbance | I |
| 53a-182 | Disorderly Conduct | CM |
| 53a-182a | Obstructing Free Passage | CM |
| 53a-183a | Obstructing or Interfering with the Lawful  Taking of  Wildlife | CM |
| 53a-183b | Interfering with an Emergency Call | AM |
| 53a-185 | Loitering on School Grounds | CM |
| 53a-188 | Tampering with private communications | AM |
| 53a-189 | Eavesdropping | DF |
| 53a-190 | Bigamy | DF |
| 53a-191 | Incest | DF |
| 53a-194 | Obscenity | BM |
| 53a-197 | Disseminating indecent comic books | AM |
| 53a-198 | Failing to identify a comic book publication | V |
| 53a-212 | Stealing a firearm | DF |
| 53a-213 | Driving while intoxicated | CM |
| 53a-214 | Criminal lockout | CM |
| 53a-215 | Insurance fraud | DF |
| 53a-218 | Interference with a burial ground | DF |
| 53a-219 | Unlawful possession or sale of gravestone | DF |
| 53A-222 | Violation of conditions of release | DF |
| 53a-252 | Computer crime, First Degree | BF |
| 53a-253 | Computer crime, Second Degree | CF |
| 53a-254 | Computer crime, Third Degree | DF |
| 53a-255 | Computer crime, Fourth Degree | AM |
| 53a-256 | Computer crime, Fifth Degree | BM |
| 53a-276 | Money laundering, First Degree | BF |
| 53a-277 | Money laundering, Second Degree | CF |
| 53a-278 | Money laundering, Third Degree | DF |

## SECTION III – INITIAL CLASSIFICATION PROCEDURES

Level 1 offenses continued…

| | | |
|---|---|---|
| 53a-279 | Money laundering, Fourth Degree | AM |
| **53a-323** | **Abuse, Third Degree** | **AM** |
| 54-102g | Illegal refusal of DNA testing | DF |
| 54-252 | Failure to Register (Sex Offender) | DF |
| 54-33e | Destruction of property | M |

### AGGRAVATING CIRCUMSTANCES

The following aggravating circumstances are some of the examples that may increase an inmate's Severity/Violence of Current Offense score.

Examples:
Offenses which involve serious physical injury.*
Offenses in which victim(s) suffered serious psychological trauma.*
Offenses which are extremely violent/heinous.
Offenses which involve multiple victims.
Offenses which involve physical violence in combination with a sexual offense.*
Offenses in which a weapon was involved.*
Multiple offenses.
Offenses in which victim(s) is under age 16 or over age 60.

*These factors should not be automatically applied, since the offense ratings account for the level of violence or use of weapons.

### MITIGATING CIRCUMSTANCES

The following examples may be considered mitigating and decrease an inmate's Severity/Violence of Current Offense score.

Examples:
Offenses in which the inmate was an accomplice rather than the primary perpetrator.
Offenses which were in part the result of the victim's actions.
Offenses which were committed in the "heat of passion."

### 3. HISTORY OF VIOLENCE

History of Violence is a good indicator of how violent an inmate is likely to be during confinement. This indicator is also important in assessing the seriousness of violence an inmate may exhibit once released from incarceration.

**SECTION III – INITIAL CLASSIFICATION PROCEDURES**

In History of Violence, emphasis is placed on the number of prior violent acts, the seriousness of these acts in terms of the rating of the offense, and the recency of the violence. In completing this factor, the Seriousness of Offense Ratings Table is to be referenced. (Violent offenses appear in bold lettering in this table.)

The current offense is not to be included in assessing an inmate's history of violence, except that Violation of Probation (53a-32) will have the underlying charge rated as Current Offense. When assessing a VOP conviction under the violence history score, the original offense date shall be utilized.

To determine the History of Violence score, the following table is to be used. When calculating time within this table, use the offense date. If the offense date is not available, use the arrest date, and, if this is not available, use the sentence date. All reasonable attempts shall be made to determine the offense date. When using the following table, the length of time indicated is the elapsed time from the previous violent offense to the beginning of the present incarceration.

4 = 1 or more violent 4 offenses in the past 5 years

3 = 1 or more violent 3 offenses in the past 5 years
1 or more violent 4 offenses greater than 5 but less than or equal to 10 years ago

2 = 1 or more violent 2 offenses in the past 5 years
1 or more violent 3 offenses greater than 5 but less than or equal to 10 years ago
1 or more violent 4 offenses greater than 10 but less than or equal to 15 years ago

1 = 1 or more violent 1 offenses
1 or more violent 2 offenses greater than 5 but less than 10 years ago
1 or more violent 3 offenses greater than 10 but less than 15 years ago
1 or more violent 4 offenses greater than 15 years ago
No violence history

**AGGRAVATING CIRCUMSTANCES**

Example:

When there are two or more violent offenses in the inmate's criminal history within the past five (5) years, and the current offense is a violent offense of the same severity or greater, then the History of Violence rating may be aggravated one (1) level.

Offenses in which the violence demonstrated by the inmate was extremely heinous, or involved multiple victims, may increase the inmate's rating by one level.
There will be no increases to level 5.

**SECTION III – INITIAL CLASSIFICATION PROCEDURES**

**MITIGATING CIRCUMSTANCES**

Example:

Offenses in which the inmate was an accomplice may decrease the rating (1) level.

**4. LENGTH OF SENTENCE**

Length of sentence is rated since an inmate facing a long period of confinement may attempt an escape at some point during incarceration. All sentences regardless of jurisdiction shall be included in this factor. Length of sentence is not utilized as a factor for inmates who are in pretrial status.

Enter one of the following ratings:
Rating / Length of Sentence

| | | |
|---|---|---|
| 5 | = | Death penalty |
| 4 | = | More than 10 years |
| 3 | = | More than 5 years but less than or equal to 10 years |
| 2 | = | Sentence less than or equal to 5 years |

There are no aggravating or mitigating circumstances for this factor. However, an adjustment may be made to the Overall Risk Level by an override if Length of Sentence is the controlling risk factor.

On an indeterminate or indefinite sentence, the maximum term shall be used to determine length of sentence. (Refer to page 80 for indeterminate sentences).

Examples:

1.    An inmate with a sentence of 5 years who receives an 8 year concurrent sentence, would have a length of sentence score of 3 (8 years).

2.    An inmate receives a 5 year Federal sentence consecutive to his current 8 year Connecticut sentence, would receive a length of sentence score of 4 (13 years).

In both examples, it does not matter which jurisdiction the sentence is from, Connecticut or other state/federal. It is the total length of confinement that determines the score.

**5.    PRESENCE OF PENDING CHARGES AND/OR DETAINERS**

This Risk Level factor incorporates separate but interrelated factors: charges that an inmate has pending either in Connecticut or another jurisdiction; a detainer hold by Connecticut authorities or

**SECTION III – INITIAL CLASSIFICATION PROCEDURES**

officials outside the state, bond amount, purge amount and time to serve on a sentence in another jurisdiction after discharge from a Connecticut sentence. Normally, an inmate with a Family Court habeas will not receive a detainer score. If the habeas has a bond amount to be posted prior to release or states "Do Not Release without...", a detainer score will be assigned accordingly. No detainer score will be assigned to a CUSCOM inmate who is only serving time from the sending jurisdiction or where the sending jurisdiction's sentence exceeds his Connecticut sentence.

The detainer rating will increase as the seriousness rating of the offense, and/or length of time to serve in another jurisdiction, and/or bond amount rises. For example, an inmate with a pending four (4) rated offense charge would be assigned a detainer four (4) score. An important issue is the equivalency of felony and/or misdemeanor charges in other jurisdictions relative to the felony and/or misdemeanor rating in Connecticut. Other jurisdictions use different terminology than Connecticut and it may be necessary to contact that jurisdiction to determine the actual severity of the pending charge or detainer hold.

If an inmate posts bond on CT pending charges either prior to or during their present incarceration, the charge shall be rated on the pending charge/detainer factor. Inmates with this situation will not be eligible for Community Release.

All pending charges, including out of state warrants which are not lodged as detainers, must be rated on the pending charge/detainer factor. This includes all charges pending even if the other jurisdiction has indicated that they will not extradite the inmate, except that if official documentation from another state exists which informs us that they will not extradite and the charge equates to a risk level 3 or lower offense; then the detainer score for this (these) charge(s) shall be removed.

The overall risk must not be lowered below the level of the detainer score as long as the pending charge/detainer remains in existence, except that if official documentation from another state exists which informs us that they will not extradite and the charge equates to a risk level 4, the overall risk score may be reduced to 3 when the appropriate percentage of time has been served and all other criteria for an "RP" have been met; the detainer score would remain at level 4 in this instance.

If a pending out-of-state charge cannot be cleared on an offense date that is greater than 10 years old and documentation exists that numerous (at least 6) attempts have been made to contact the other state for confirmation of detainer and/or extradition with no success, the detainer score may be reduced to a 1.

A detainer score shall not be authorized for any offender who has a court date for accelerated rehabilitation and/or to verify court mandated completion of programs.

No detainer or length of sentence score shall be assigned to an inmate who is on parole in another jurisdiction, as these inmates are on release status.

## SECTION III – INITIAL CLASSIFICATION PROCEDURES

**Purge** – An amount set by the court when an inmate is found to be delinquent on family support payments and was adjudged to be in contempt for failure to comply with a court order. Inmate is held until the purge figure is paid or until further order of the court.

Any inmate with a pending charge or detainer may only be authorized a percentage of time reduction to the level of the pending charge or detainer, except as noted above.

Enter one of the following ratings:

Rating

4 = a.  Pending 4 rated charge or equivalent
    b.  Total amount of bond and/or purge amount greater than $50,000
    c.  More than 10 years to serve on a sentence in another jurisdiction after discharge from a Connecticut sentence

3 = a.  Pending 2 or 3 rated charge or equivalent
    b.  Immigration and Customs Enforcement (ICE) (formerly INS) Detainer- Immigration Detainer Notice of Action Form (In section 4 of the Inmate Master File).
    c.  Total amount of bond and/or purge amount greater than $5,000 and less than or equal to $50,000
    d.  More than 5 years but less than or equal to 10 years to serve on a sentence in another jurisdiction after discharge from a Connecticut sentence.

2 = a.  Pending 1 rated charge or equivalent
    b.  Total bond and/or purge amount less than or equal to $5,000
    c.  Less than or equal to 5 years to serve on a sentence in another jurisdiction after discharge from a Connecticut sentence

1 = a.  No pending charges or detainer
    b.  No time to serve on any sentence in another jurisdiction after discharge from a Connecticut sentence
    c.  Out of State charges level 3 and below with official documentation that the other state will not extradite

Department of Homeland Security (DHS) - Immigration and Customs Enforcement (ICE) Detainer: Official Documentation (Immigration Detainer Notice of Action Form) has been received from ICE Officials, which indicates that the individual is being investigated for possible deportation proceedings, deportation hearing or deportation.

If further information is needed, ICE should be contacted in Hartford, Connecticut at

**SECTION III – INITIAL CLASSIFICATION PROCEDURES**

(860) 240-3012.

Note:  Federal and out-of-state charges are to be equated with Connecticut felony and misdemeanor charges.

There are no aggravating and mitigating examples for this factor.

**6. DISCIPLINE HISTORY**

The Discipline History factor reflects an inmate's disciplinary behavior during both prior and present periods of commitment. This factor shall be rated as follows:

5=    A. An inmate found guilty during the initial rating period of:
        a. Intentional/Direct Assault on a Department of Correction employee resulting in serious injury as defined in Administrative Directive 6.6, Reporting of Incidents.

        b. Hostage holding of a Department of Correction employee;

        c. Riot.

    B. A readmitted inmate who previously discharged with a Discipline factor of 5.

4=    A. An inmate who has been verified as a Security Risk Group Member in accordance with Administrative Directive 6.14, who is found guilty of any of the following disciplinary offenses during the initial rating period: creating a disturbance, assault, fighting, contraband A (possessing a dangerous instrument).

    B. An inmate found guilty of an assault on a Department of Correction employee not resulting in serious injury during the initial rating period as defined in Administrative Directive 6.6, Reporting of Incidents.

    C. A readmitted inmate who discharged or paroled from the Department of Correction with a Discipline factor of 4, or a newly sentenced inmate who prior to sentencing had Discipline Factor of 4.

    D. An inmate admitted to a Chronic Discipline Unit will receive a disciplinary score of 4.

3=    A readmitted inmate who has discharged or paroled from the Department of Correction with a Discipline Factor of 3, or a newly sentenced inmate who prior to sentencing had a Discipline Factor of 3.

2=    A readmitted inmate who previously discharged from the Department of Correction with a

**SECTION III – INITIAL CLASSIFICATION PROCEDURES**

> Discipline factor of 2, or a newly sentenced inmate who prior to sentencing had Discipline Factor of 2.

1=   An inmate who previously discharged from the Department of Correction with a Discipline factor of 1 or a newly admitted inmate who has accrued no disciplinary sanctions during the initial rating period.

If, during the Initial rating period the inmate qualifies for a disciplinary factor increase as per Section IV-D-1-a, Disciplinary Increases, the Disciplinary factor shall be adjusted accordingly. Also, if during the initial rating period it is discovered that an inmate was not rated correctly at the end of the inmate's last incarceration, and no more than six months has elapsed since the inmate was eligible for a Discipline History Factor increase, the inmate should be rated at whatever the correct rating should have been at the end of the previous incarceration.

If it is determined that a newly admitted inmate has not been found guilty of a Class "A" or "B" disciplinary report under the Code of Penal Discipline A.D. 9.5 for one (1) calendar year (six (6) months for inmates under 16 years of age) a reduction of one (1) level may be made to this factor.

**7.   SECURITY RISK GROUP MEMBERSHIP**

This factor reflects the level of membership within a designated Security Risk Group. The Security Risk Group factor shall be rated as follows:

4=   An inmate designated as a Security Risk Group Safety Threat Member in accordance with Administrative Directive 6.14.

3=   An inmate who is a verified member of a Security Risk Group in accordance with Administrative Directive 6.14.

2=   An inmate who has successfully renounced his SRG membership in accordance with Administrative Directive 6.14.

1=   An inmate who has never had membership in a Security Risk Group.

An inmate discharged from the Department of Correction while designated as a Security Risk Group Safety Threat Member or a verified member of a Security Risk Group shall be readmitted at the same level. A reduction in the level may be made in accordance with Administrative Directive 6.14, Security Risk Groups.
There are no aggravating or mitigating circumstances for this factor.

**SECTION III – INITIAL CLASSIFICATION PROCEDURES**

**C.  MANAGEMENT SUBCODES**

During classification, an inmate may present one or more special management concerns that are to be brought to the attention of facility staff.  Management Subcodes are to be considered as "flags" to designate a special situation or condition to be monitored by staff and shall be maintained as current and accurate.

ALL 14 AND 15 YEAR OLDS SHALL AUTOMATICALLY RECEIVE A "Y" MANAGEMENT SUBCODE.

When designating a special management consideration, the appropriate codes below are used and entered into the classification record.

| | | |
|---|---|---|
| N = | Will be entered if none of the following management subcodes are applicable. |
| A = | Assaultive: Refers to an inmate who is very likely to be assaultive or violent while confined (2 or more disciplinary reports for assaults on other inmates or 1 disciplinary report for assault on a DOC employee within the last 5 years). |
| AR = | Approved Re-entry Furlough. |
| CI = | CT inmate transferred out of state pursuant to the corrections compact (CUSCOM); assessment to be completed upon return to Connecticut. |
| CO = | Out of state inmate transferred to Connecticut pursuant to the corrections compact (CUSCOM). |
| CD = | Chronic Discipline: When an inmate is assigned to a Chronic Discipline Unit. |
| D = | DCF has legal guardianship over an inmate: Refers to those inmates who have DCF as their legal guardian. |
| DC = | Denied Community Release (includes TS and HWH denials). |
| DI = | Denied Intensive Probation Supervision. |
| DP = | Death Penalty Imposed. |
| DR = | Denied Re-entry Furlough. |
| DS = | Dual Supervision.  This refers to inmates serving their sentenced on Transitional Supervision and Special Parole. |
| DV = | Documented case of violence in a spousal/significant other relationship as part of the inmate's instant offense. |
| F = | Fire Setting: Refers to an inmate who is likely to set fires. |
| G = | Groups: Refers to inmates involved in organized group activities, other than designated security risk groups, which pose a threat to the safety of the public, staff, the facility or other inmates.  Identify the specific group on the comment line. |
| HC = | Approved for DUI/Drug Supervision Home Confinement Program. |
| HD = | History of Domestic Violence within the past 5 years (not including Instant Offense).  An inmate can have both codes. |
| HW = | Approved for Halfway House placement. |

## SECTION III – INITIAL CLASSIFICATION PROCEDURES

HS = High Security: an inmate designated as High Security in accordance with Administrative Directive 9.4.

IC = Interest Closed for Community Release.

IP = Recommended Intensive Probation Supervision

MM = Mandatory Minimum

NE = No pending charge. Jurisdiction will not extradite. This issue shall be explained on the comment line.

NM = Non Mandatory Minimum

NP = Not interested in Intensive Probation Supervision.

NR = Not eligible for Re-Entry Furlough.

NS= No sponsor for Transitional Supervision.

OC= Outside Clearance Approved

P = Profile: Separation profile exists.

PC = Protective Custody: When an inmate is assigned to protective custody housing.

SM = Special Monitoring- Refer to Administrative Directive 9.4 for detailed explanation.

SN = Special Needs- Refer to Administrative Directive 9.4 for detailed explanation.

TS = Approved for Transitional Supervision.

V = Victim: Refers to an inmate who is likely to be victimized.

WM= Watch for Mandatory Minimum.

Y = Youth: All inmates under the age of 18. **REQUIRED FOR ALL 14 AND 15 YEAR OLDS.**

## D. INMATE NEEDS ASSESSMENT

The following seven needs categories are rated to assist in the development of a treatment plan for each inmate.

During the first fourteen days of incarceration, pretrial inmates and all individuals sentenced to sixty (60) days or more shall be classified in all needs areas.

When inmate needs are rated, the initial classification process is completed. Each discipline responsible for evaluating need scores shall communicate these scores to Classification staff before the end of the fourteen day assessment period.

1. = Medical need (M)
2. = Mental health need (MH)
3. = Education need (E)
4. = Substance abuse treatment need (T)
5. = Vocational/work skill need (V)
6. = Sex treatment need (S)
7. = Community resource need (C)

## SECTION III – INITIAL CLASSIFICATION PROCEDURES

### 1. MEDICAL NEED (M)

An individual's physical condition will be assessed concerning specific medical needs for treatment within the correctional environment.

The medical needs scoring may only be conducted and determined by a licensed health professional such as a registered nurse or physician, upon intake and annually thereafter or as a significant change in the individual's physical condition occurs.  Classification staff shall be notified of initial scores and any future changes in scoring, with appropriate subcodes.

Ratings:

**M5**   **Assessment:**   These inmates need 24 hour nursing care, possibly for an extended period of time.  Refer to **Appendix B** for additional information.

Examples of medical conditions meeting the M5 level of care may include severe vomiting or weakness, quadriplegia, more than 1 seizure within 24 hours and/or the need for IV antibiotics.

**M4**   **Assessment:**   These inmates need 24-hour access to nursing care, but most of the time doesn't actually access that care.  There is a reasonable likelihood that from time to time they will need 24 hour actual nursing care (not just access to it).  Refer to **Appendix B** for additional information.

Examples of medical conditions meeting the M4 level of care may include adjustment of seizure medication, skin breakdown, congestive heart failure with shortness of breath, and active treatment for Hepatitis C.

**M3**   **Assessment:**   These inmates need predictable access to nursing care for 16 hours a day, 7 days a week. (Any need for Directly Observed Therapy, other than TB treatment, qualifies as M3) Refer to **Appendix B** for further information.

Examples of medical conditions meeting the M3 level of care may include seizure disorder with no seizures within the last 3 months, stable hemiplegia.

**M2**   **Assessment:** These inmates are not expected to require nursing care on a regular basis, they have Some subacute or chronic disease that requires occasional nursing attention, but not on an urgent basis. Refer to **Appendix B** for further information.

Examples of medical conditions meeting the M2 level of care may include long standing hemiplegia, uncomplicated urinary tract infection, bronchitis, and

**SECTION III – INITIAL CLASSIFICATION PROCEDURES**

asymptomatic Hepatitis C.

**M1**   **Assessment:** These inmates have no physical problems that require nursing attention, other than problems that might arise in the future due to illness or injury. Refer to **Appendix B** for further information.

**Medical Subcodes:**

A= Advanced Directives
B= Blind
C= Crutch
D= Deaf
H= Hospice
I=Life Threatening Allergy to Stinging Insects
K= Walker
N= Cane
O= Other medical device (ex. Sleep apnea machine, chronic tracheotomy, ileostomy, colostomy, ureterostomy, oxygen concentrator; **DOES NOT** include hearing aids, dentures, glasses or contact lenses.)
R= Prosthetic Device- any adaptive, detachable body part
W= Wheelchair-Hemi, Para, or Quadriplegic or other medical condition requiring W/C use.
X=Life Threatening Allergies other than to stinging insects (anaphylaxis)
Y= Inmate is detoxing from substance use

**2.   MENTAL HEALTH NEED (MH)**

An individual's mental health needs will be assessed concerning specific needs for treatment within the correctional environment. Behavioral, cognitive, emotional, and/or interpersonal deficits or patterns that potentially influence adjustment within an institutional or community correctional environment are critical factors in determining the mental health score.

Whenever possible, all Mental Health Need Scores will be determined by mental health professionals. In those facilities with limited mental health resources, MH-1 and MH-2 ratings may be determined by qualified classification staff or by health services staff who do not specialize in mental health. Rating of MH-3 and above may only be scored by mental health staff. Mental Health needs scoring must be done on intake and annually thereafter or when a significant change in the individual's condition occurs.

All inmates will receive a mental health classification. Depending on their condition, some inmates will receive one or more mental health subcodes.

**SECTION III – INITIAL CLASSIFICATION PROCEDURES**

Correctional Managed Health Care (CMHC), in cooperation with the DOC Department of Health and Addition Services will publish a detailed guide to mental health classification intended to help health services staff accurately and consistently classify each offender. This guide will be revised as necessary, and become part of the CMHC Policy and Procedure Manual. The current version is appended to this manual as Appendix C.

Classification staff shall be notified of initial scores and any future changes in scoring, with appropriate subcodes.

**MH5**   **Assessment:** Crisis level mental disorder (acute conditions, temporary classification). Requires 24 hour nursing care.

Examples of mental health conditions meeting the MH-5 level of may include but are not limited to acute psychosis, severe depression, suicidal ideation, suicidal gestures or attempts, and overwhelming anxiety. Moreover, these inmates can be actively suicidal or self-mutilators. They require suicide watch, 15 minutes watch or one-to-one monitoring. Refer to **Appendix C** for further information.

**MH4**   **Assessment:** Mental Health disorder severe enough to require specialized housing or ongoing intensive mental health treatment; usually on psychotropic medications.

Examples:  Individuals with chronic schizophrenia or bipolar disorders with frequent psychotic exacerbations, who need medication and assistance with activities of daily living; Individuals with borderline personality disorder with frequent suicidal gestures or episodes of self-mutilation, who, due to chronic mood instability and impulsiveness, require daily contact and support; Mentally retarded individuals in need of assistance with activities of daily living and self-care. (Many of the above described inmates may be preyed upon by others within a general population as a result of their disability.)   Refer to **Appendix C** for further information.

**MH3**   **Assessment:** Mild or moderate mental health disorder (or severe mental disorder under good control); may or may not be on psychotropic medication.

Examples:  Individuals with chronic schizophrenia or bipolar disorder who are compliant with medications and may have periodic psychotic exacerbations requiring hospitalization yet are able to function in a general population setting; Individuals with major depression who may have a history of suicidal behavior and need supportive services and/or medications and may require periodic hospitalizations; Individuals with personality disorders, e.g. borderline personality disorder and require supportive services and crisis intervention to prevent self-mutilation or suicidal gestures.  Refer to **Appendix C** for further information.

**SECTION III – INITIAL CLASSIFICATION PROCEDURES**

MH2  **Assessment:** History of mental health disorder that is not currently active or needing treatment; or current mild mental health disorder, not requiring treatment by a mental health professional.

Examples: Individuals with a history of mental health treatment for adjustment disorder, depression, anxiety, attention-deficit hyperactivity disorder, conduct disorder, phobias, eating disorders, brief psychotic episodes, post-traumatic stress disorder, or developmental disorders with no current symptoms and no need for medication or follow-up services. Refer to **Appendix C** for further information.

MH1  **Assessment:** These individuals have no mental health history or current need and may be characterized as emotionally stable.

Examples: Individual denies any mental health history, denies any suicidal ideation or suicide attempts with no evidence of anxiety, depression or psychosis. Refer to **Appendix C** for further information.

**Mental Health Subcodes:**

D= Inmate who meets DMHAS target population. This code is to be applied when the inmate:
1. Has a history of serious/persistent mental illness that has required DMHAS intervention in the community.
2. Meets DMHAS target population criteria.
3. Requires referral to DMHAS for discharge planning prior to release.

R= Denotes developmental disability. This code can be applied when the inmate:
1. Is receiving or has received Department of Developmental Services (DDS) services.
2. Has IQ scores below 70 Full Scale on individually administered IQ tests and has concurrent impairments in at least 2 areas of adaptive functioning.
3. If inmate meets either #1 or #2 above and has difficulty functioning within the correctional environment and requires reasonable accommodations.
4. Requires referral to DDS for services upon discharge.

B= Denotes Brain Injury. This code is applied when the inmate:
1. Has Traumatic Brain Injury or
2. Has acquired brain injury **or**
3. Has a congenital birth related brain injury **plus**
4. Has deficits related to impulse control, memory and cognition that directly impact functioning within the correctional environment  and require reasonable accommodation **and**
5. Requires special referral for services upon discharge.

**SECTION III – INITIAL CLASSIFICATION PROCEDURES**

**3.  EDUCATIONAL NEED  (E)**

The following assessment criteria shall be used to identify the educational level of the individual. Ratings for E-1 through E-4 may be rated by classification staff/education staff.  E-5 is to be referred and rated by an education specialist.  Classification staff shall be notified of initial scores and any future changes in scoring, with appropriate subcodes.

Ratings:

**E-5**   **Assessment:** Individuals who self report or the education achievement testing indicates the offender is performing at a grade level of 0 through 4.9.

Response: **ABE1-** These individuals are eligible for enrollment in educational programming equivalent to grade levels 0 through 4.9.

**E-4**   **Assessment:** Individuals who self report or the education achievement testing indicates the offender is performing at a grade level of 5 through 8.9.

Response:  **ABE2-** These individuals are eligible for enrollment in educational programming equivalent to grade levels 5 through 8.9.

**E-3**   **Assessment:** Individuals who self report or the education achievement testing indicates the offender is performing at a grade level of 9 through 12.

Response:  **ABE3-** These individuals are eligible for enrollment in educational programming equivalent to grades 9 through 12.

**E-2**   **Assessment:** Individuals who have a verified  high school diploma (verified by the Education Unit).

Response:  These individuals are eligible for college programming and/or career technical education (CTE) programs.

**E-1**   **Assessment:** Individuals who have a verified completion of 1 or more college courses.

Response:  These individuals are eligible for for college programming and/or career technical education (CTE) programs.

**SECTION III – INITIAL CLASSIFICATION PROCEDURES**

**Education Subcodes**

E=    Enrolled
I=    Interested in programming
L=    Literacy Needs
O=    Other than English Language Speaker
P=    Pending verification of HSD/GED
R=    Refused programming
S=    Self Reported
V=    Verified HSD/GED

**Subcodes "P" or "V" are required for each individual.  Upon readmission, the "V" subcode is to be maintained for inmates with a 1 or 2 Educational score and shall not be changed.  This indicates they have received their High School Diploma/GED.**

**4.  SUBSTANCE ABUSE TREATMENT NEED  (T)**

The substance abuse treatment need will describe the extent, nature and pattern of alcohol or other drug use related to general life functioning.  Therefore, it is important to assess, identify and treat, when possible, any individual with a history of substance abuse, particularly when such abuse has led to criminal activity.

Addiction Services staff shall notify Classification staff of initial scores and any future changes in scoring, with appropriate subcodes.

Ratings:

**T-5**    **Assessment:**   These individuals have an extremely serious substance abuse problem and require a high level of intensive treatment of extended duration, such as DOC residential treatment. These individuals have a very high probability of relapse into active substance abuse.

Response:   The appropriate level of intervention is completion of a Tier 4 (Therapeutic Community) program, a Tier 3 'Recovery/Re-entry Unit Program', or **long-term** community residential substance abuse treatment.  If the inmate has completed Tier 4 or Tier 3 during this period of incarceration, reevaluation by Addiction Services is recommended for community based outpatient services.

**T-4**    **Assessment:**  Individuals receiving this rating indicate a serious substance abuse problem and require residential or intensive outpatient treatment.

## SECTION III – INITIAL CLASSIFICATION PROCEDURES

Response:  The appropriate level of intervention is completion of a Tier 4 (Therapeutic Community) program a Tier 3 'Recovery/Re-entry Unit' program, or community residential substance abuse treatment and community based aftercare services.  If a Tier 4 or Tier 3 residential program is not available, completion of Tier 2 'Intensive Facility Based Outpatient Treatment' program followed by community- based aftercare services is recommended.  If  the inmate has completed Tier 4 or Tier 3 during this period of incarceration, community based outpatient services are still recommended.

**T-3**   **Assessment:** Individuals receiving this rating have a moderate substance abuse problem that requires treatment.

Response:  The appropriate level of intervention is completion of a Tier 2 'Intensive Facility Based Outpatient Treatment' program where available, and community based aftercare services.  If the inmate has not completed Tier 3 or Tier 2 during this period of incarceration, community based intensive outpatient substance abuse treatment is recommended.

**T-2**   **Assessment:** These individuals have a slight substance abuse history and would benefit from a brief substance abuse intervention.

Response:   The appropriate level of intervention is voluntary participation in recovery support services.

**T-1**   **Assessment:** These inmates do not appear to have a substance abuse problem.

Response: These individuals do no require any substance abuse intervention.

**T-0**   **Assessment:  These inmates have not been assessed, a Substance Abuse Treatment (t) score has not been established.**

Response:  Addiction Services Unit staff shall complete a formal assessment.  Any new admission to the DOC will be assigned a '0' T score.

**Substance Abuse Treatment Subcodes:**

A= Addiction Severity Index (ASI) tool utilized to evaluate.
S = TCU drug screen II (TCUSD II) tool utilized to evaluate.
C = Completed (indicates the highest level of program completed ex. C2, C3, C4)
    2 = indicates Tier II completion (to be utilized with C subcode)
    3 = indicates Tier III completion (to be utilized with C subcode)
    4 = indicates Tier IV completion (to be utilized with C subcode)

**SECTION III – INITIAL CLASSIFICATION PROCEDURES**

U = Unverified, self report by inmate.
V = Verified by documentation

**5.   VOCATIONAL/WORK SKILLS NEED (V)**

The following assessment criteria shall be used to identify the employment history and vocational/career technical education (CTE) level of the individual. All ratings may be self-reported (SR). Any verified (V) information shall be made by the education unit. Classification will be notified of initial scores and any future changes in scoring with appropriate subcodes, as warranted.

Ratings:

**V-5**    **Assessment: :** Individuals who self report no employment history and have never been enrolled in a USD #1 vocational/CTE program.

Response:  These individuals are eligible for career counseling and enrollment in a USD #1 vocational/CTE program.

**V-4**    Individuals who self report 1 to 2 years of employment history and have never been enrolled in a USD #1 vocational/CTE program.

Response:  These individuals are eligible for career counseling and enrollment in a USD #1 vocational/CTE program.

**V-3**    **Assessment:** Individuals who self report 2 to 5 years of employment history or have been or are currently enrolled in a USD #1 vocational/CTE program.

Response:  These individuals are eligible for career counseling and enrollment in a USD #1 vocational/CTE program.

**V-2**    **Assessment:** Individuals who self report 5 or more years of employment history or have received a completion certificate in a USD #1 vocational/CTE program.

Response:   These individuals are eligible for career technical education (CTE) programs, Correctional Enterprise or facility work assignment.

**V-1**    **Assessment:** These offenders have a verified State licensure or professional certification or have completed a USD #1 vocational/CTE Apprenticeship Program.

Response:   These individuals are eligible for career technical education (CTE) programs, Correctional Enterprise or facility work assignment.

## SECTION III – INITIAL CLASSIFICATION PROCEDURES

### Vocational/Work Skills Subcodes:

S=    Self Report
V=    Verified USD #1 Program
P=    Pending verification of State licensure or professional certification
I =    Interested in vocational/CTE Programming
R=    Refused CTE Programming
E =    Enrolled in Vocational Program

**Subcodes "V", "P", "R" or "E" are required for each individual**.

### 6. SEX TREATMENT NEED (S)

The sex offense treatment need score indicates an inmate has a record or known history of problem sexual behavior. This area will focus on the level of sexual re-offense risk and address program intervention needs. This need score identifies the inmate's program needs based on information acquired through Court Transcripts, Pre-Sentence Investigations (PSI), police reports, Department of Correction Reports, Department of Children & Families (DCF) reports, etc. that are utilized to complete nationally accepted and validated risk instrument(s). Use of Criminal Justice information shall adhere to the guidelines provided in the Introduction, Section III-A.  Scores on risk instruments may directly impact the 1-5 sex need score.

Charges and Convictions for "Risk of Injury", CGS, 53-21(2) (a) are sexual in nature. If the subsection "(2)" or (2)(a) is not present on the sentencing Mittimus, the case must be investigated further to determine if the offense is sexual in nature.

In some cases, documentation (Pre-Sentence Investigations (PSI), police reports, Department of Correction Reports, Department of Children & Families (DCF) reports, etc.), may not arrive in a timely fashion or may not be available.  Lack of documentation may also result in an inability of staff to accurately complete risk instruments. In these situations, staff must rely on inmate self-report data. Documentation indicating scoring by self report data shall be entered into the Master file. Due to the obvious potential lack of accuracy or reliability/validity of self-report information, a score based on such data must be so designated by a subcode as described below ("U").

Risk instrument ratings will directly influence the 1-5 sex treatment need score.  A subcode of "E" (evaluation) shall be entered to indicate that risk instrument ratings have been utilized to establish the 1-5 sex treatment need score.

Classification/Intake staff are responsible for entering/assigning sex treatment need scores and all subcodes into the Objective Classification system and conducting the appropriate Classification transactions. In institutions where specialized sex offender  treatment programs exist, any inmate

## SECTION III – INITIAL CLASSIFICATION PROCEDURES

with a sex treatment need score of S-2 or higher and an "I" sub-code (program "interest") shall be referred to sex treatment  program staff for evaluation. In institutions where specialized sex treatment staff are not available, sex offenders with a subcode of "I" shall be considered for transfer to a program institution.

If the individual fits multiple categories, the rating should be based on the highest score, e.g. if an inmate has a history of exhibitionism and also has a conviction for sexual assault, the score should be based on the sexual assault.

Any consideration for a sexual treatment need score based on non-conviction information including but not limited to: an original Sexual Offense charge substituted to a non-Sexual Offense charge/conviction; information discovered in a Pre-Sentence Investigation (PSI) or Police Report which is part of a crime resulting in a conviction that was sexual in nature, sex treatment need history information or due to the receipt of disciplinary reports that are sexual in nature shall require a hearing pursuant to the procedures set forth for sex treatment need scores based on non-conviction information prior to the assignment of the sex treatment need score.  Please refer to Appendix for additional information and forms.

S-5     **Assessment:**  These individuals have a current conviction, pending charge or known history of sexual offenses involving physical contact with their victim(s), in addition, the offender uses gratuitous and/or sadistic violence. An offender of this type may have a history of criminal and sexual violence giving them the designation of "Persistent Dangerous Sexual Offender", but a first time offender may qualify if the offender causes extreme physical harm to the victim or there is evidence of ritualistic or sadistic sexual abuse.  In addition, if it is determined that a sex offender inmate scores in the high range on the HARE Psychopathy Scale, the inmate may be scored with an S-5 (based on clinical assessment).

S-4     **Assessment:**  These individuals have a current conviction, pending charge or known history of two or more sexual offenses which involved physical sexual contact. This score will be designated for inmates who have two or more sexual assaults on two or more victims.   Physical violence may or may not be evident in the sexual assault cases, but an S-4 score reflects a pattern of behavior. Offenders who score Moderate High to High on risk instruments shall be scored S-4. In addition, an offender who refuses or drops out of treatment may have their score increased to S-4 (based on clinical assessment).

S-3     **Assessment:**  These individuals have a current conviction, pending charge or known history of sexual offenses involving physical contact with the victim(s) (necrophilia included).  The offenses may include coercion, manipulation, or exploitation.  This includes an offender who takes advantage of an opportunity where drugs and alcohol

are being used as a tool. An inmate who engages in predatory sexual behavior while incarcerated will be given a score of S-3.

**S-2** **Assessment:** These individuals have a current conviction, pending charge or known history of non-contact sexual offense(s) These individuals score Low or Low Moderate on risk instruments. Multiple non-contact offenses may increase risk instrument scores. These behaviors may include but are not limited to:
Voyeurism,
Exhibitionism,
Obscene Telephone Calling (telephone scatalogia),
Use, sale or exchange of child pornography and/or internet child pornography
Promoting Prostitution of a Minor
Other Paraphilias

If an inmate has many occurrences of non-contact offenses or a significant history of non-contact offenses, it may be clinically indicated to raise the score to an S-3.

**S-1** **Assessment:** These individuals have no current conviction, pending charge or identified history of sexual offenses. They may self-report having been sexually abused, suffering from compulsive sexual behaviors or obsessive thoughts but have not, based on all available information, committed criminal sexual behaviors. They may suffer from paraphilias such as fetishism but have no history of acting out in any sexually offending manner. These individuals may suffer from other sexual concerns or sexual dysfunction unrelated to any sexual criminal acts.

A sex offender treatment needs score may be increased due to additional background history, current activity, or inmate self report. A sex offender treatment needs score may not be lowered by either clinical staff or classification staff (except when the information utilized for the basis for the original score is found to be in error, the information changes or the information was misinterpreted). Scores may be lowered only by approval from the Commissioner or designee.

**S-0** Indicates that a hearing shall take place.

**Sex Treatment Need Subcodes:**

All sub-codes are to be completed or modified (if appropriate) during intake screening and during Classification reviews.

One of the following subcodes, "V" or "U" must be utilized at the time of the initial rating of each individual. All offenders shall be scored with either an “R” or “I” sub-code.

## SECTION III – INITIAL CLASSIFICATION PROCEDURES

D=    Denial; These individuals categorically deny their charges or any sex crimes.

E=    Evaluation; These individuals have sex offender risk instruments completed, the ratings entered into the sex Offender Program database and the ratings calculated into the 1-5 sex treatment need score. Risk instruments can be completed on offenders with sex offense allegations or charges, including inmates who have been accused of sexual assault by other inmates or have received sexual misconduct disciplinary reports due to sexual misconduct against a staff member. A risk evaluation does not need to be done on an inmate who has no known sexual offense history.

H=    Hearing:  A hearing for determining sex treatment need scores based on non-conviction information will need to be held at the facility in a private setting with the inmate to advise them of the reason for the proposed sex treatment need score.

I=    Interest; These individuals have explicitly indicated an intention to participate in sex offender programming.

N=    Denotes score based on non-conviction information.

R=    Refusal; These individuals, regardless of the stated reason have refused to participate in specialized sex offender programming.

U=    Unverified:  Official documentation is lacking.  Rating is based on individual self report or unverified information. A rating with this code is considered conditional or temporary but will remain in force until further information becomes available. In the event that the individual is a pre-trial detainee, the initial rating may be based upon the charges pending and the assumed accuracy of the charges.

V=    Verified:  Information used to classify the individual is documented in the official record and is considered accurate.

The assigned sex treatment need score is not listed on the C-7. At the time of initial classification, the information will be shared with the inmate verbally.  If an inmate would like a copy of his sex treatment need score, he/she will need to request it in writing from his Unit Counselor. A copy of the sex treatment need information will be placed in the inmate Master file.

## 7.  COMMUNITY RESOURCES NEED (C)

This factor describes the level of priority/intervention required for the sentenced offender to receive assistance with prerelease and discharge planning to facilitate a successful transition into the community.

**SECTION III – INITIAL CLASSIFICATION PROCEDURES**

Ratings:

C-5   **Assessment:** These inmates require full and total assistance with regard to prerelease planning.  (e.g. long history of homelessness, no work skills, no work history or support system evident).

C-4   **Assessment:** These inmates require significant assistance with prerelease planning in at least three (3) major areas. ( e.g. housing, job, community treatment resources, financial, social/recreational, childcare/ family support or other areas).

C-3   **Assessment:** These inmates have a moderate need for prerelease planning.  They will require some level of assistance with prerelease planning in at least 2 areas as mentioned above.

C-2   **Assessment:** These inmates may have some need for assistance.  They generally have a history of permanent residence, work histories, and/or familial or social support, which may or may not have been disrupted by incarceration.  They may require some assistance with prerelease planning.

C-1   **Assessment:** Inmates with this rating need no reentry assistance for one of several reasons, as defined below:

1. The inmate has a prerelease plan in place, including residence, social and familial support systems,;

2. The inmate is serving a long-term sentence (greater than 5 years) with no need for reentry assistance at the time.  These inmates should be assigned an L subcode to designate a long-term sentence.  These inmates should be reviewed during regular reclassification reviews to ensure the score is revised as necessary as the inmate draws closer to their release date, or;

3. The inmate has no need at this time for reentry assistance (i.e. unsentenced inmate, etc.).

All inmates assigned a need score of C-3 or higher must be seen by a Transition Services Or Re-entry Counselor at least six months prior to release.  The Transition Services or Re-entry Counselor will complete the Community Resources Need Checklist (Attachment D) with the inmate and ensure a copy is filed in Section 5 of the inmate's master file.

Any inmate sentenced to less than six months must be seen immediately to determine the level of need and to initiate prerelease planning services as appropriate.

**SECTION III – INITIAL CLASSIFICATION PROCEDURES**

**Community Resource Need Subcodes:**

| | |
|---|---|
| C = | Completed Community Resources Needs Checklist, filed in master file |
| E = | Employment need |
| H = | Housing/Residence need |
| I = | Identification Confirmed |
| L = | Long term sentence (greater than or equal to 5 years) - use with C-1 score only |
| M = | Health Services need (medical/mental health) |
| N = | Identification needed prior to release |
| O = | Other need (document on ICF) |
| P = | Participating in transitional services programming |
| R = | Refused transition services programming/assistance |
| S = | Short term sentence (less than 5 years) |
| U = | Unsentenced |

**SECTION IV: RECLASSIFICATION PROCEDURES**

**A. INTRODUCTION**

Classification staff periodically review an inmate's risk and needs profile after initial classification. These reviews occur when new information is received (e.g., pre-sentence investigation reports, police reports, mental health evaluations, etc.), when disciplinary behavior prompts a risk change, when a scheduled period of time passes necessitating such a review, and when any kind of Parole Board action is taken. The Offender Accountability Plan shall be reviewed and updated if necessary during reclassification reviews (RRs) in accordance with the Offender Accountability Plan Manual.

Five different types of reclassification reviews are conducted which may affect an inmate's Overall Risk Level. Each of these reviews requires varying responses by staff and inmate involvement. **No transaction shall be left open longer than 14 days.**

| Reclassification Review Chart | | |
|---|---|---|
| Type of Review | | Inmate Involvement |
| **RR** | **Regular Review –** Risk and Need Scores Verified. Complete Criminal History Checks (In-state and Out-of- State). | Inmate seen prior to beginning the review process, except where safety and security prohibit. The inmate may waive to be seen. |
| **RC** | **Review Community Release Program Placement** Requires the same criteria as a Regular Review. | Inmate seen - **Mandatory** |
| **RP** | **Review for Overall Level Reduction –** Percentage of time must be served prior to transaction being initiated. Requires the same criteria as a Regular Review | Inmate notified if approved and **seen if** denied. |

| RD | **Review due to Disciplinary Behavior –** | Inmate seen – except where safety and security prohibit.  In such cases, the inmate shall be notified in writing within 24 hrs of action. |
| RI | **Review due to New Information**<br>To include return from C/R with Violation of Program Provisions (Done under an RI) | Inmate seen – except where safety and security prohibit.  In such cases, the inmate shall be notified in writing within 24 hrs of action. |

**All of the above Classification actions shall be clearly documented on the Inmate Classification Form (ICF) and the Inmate Classification History Form (CN9701) located on top of section 5 of the Inmate Master File.  "All reviews completed" shall be documented on the Inmate Classification Form (ICF), as well as any significant reason/circumstance for a particular risk score or management subcode.**

**B.  REGULAR RECLASSIFICATION REVIEWS – (RR)**

**Regular Reviews shall be initiated at least once every six (6) months after the Initial Classification (IN) has been closed.  Level 4 and Level 3 general population inmates with sentences greater than five (5) years remaining on their sentence need only have a Regular Review performed annually.  Inmates currently in the custody of the Department of Correction being held solely for Federal authorities, to include inmates held for ICE, with no pending Connecticut charges, and no Connecticut sentence to serve, need only to have a Regular Review performed annually.**

Regular Reclassification Reviews must occur at the above intervals. Prior to beginning this process, the inmate must be seen and informed that a Regular Review is being initiated.  When warranted, an inmate may receive a Regular Review as the result of a change in internal or external factors which could directly affect an inmate's overall risk level (e.g., a new sentence, sentence reduction, etc.). **When staff complete an RC or RP transaction and document that a complete criminal history check has been conducted, they shall forward the date of the next Regular Review by six (6) months.**

**Five principle activities occur during the Regular Review process.**  These include:

1.    **Review of the Overall Risk Level Appropriateness**

During a Regular Review, an inmate's Overall Risk Level shall be examined to determine the appropriateness based on the offender's adjustment to confinement, disciplinary history, time remaining on all sentences, and the overall risk to the safety and security of the community and facility.  A change may be recommended as an override when substantial aggravating or mitigating circumstances exist which warrant a Risk Level/Overall Risk Level modification.

CONNECTICUT DEPARTMENT OF CORRECTION OBJECTIVE CLASSIFICATION MANUAL REV.   4/12

## SECTION IV: RECLASSIFICATION PROCEDURES

**2.      Review of Pending Charges or Detainers**

During a Regular Review, a complete criminal history record check shall be conducted to determine the accuracy of the individual risk factor scores.  The disposition/status of all charges (disposed or pending) shall be clearly noted on the source document, initialed, dated and placed in the inmate's master file.  In addition, when Classification staff are confirming that a Connecticut charge is still pending, the Classification staff member shall also request a habeas, if necessary, from the court/police department and the request shall be documented in the inmate's master file on the Inmate Classification History Form.

For any noted out-of-state pending charge(s), detainers, or wanted person confirmation Classification staff shall request a copy of the warrant/detainer from the out of state agency and forward this paperwork to the facility's records department for processing. The originating staff member should note these reviews on the ICF to satisfy documentation requirements.

**3.      Review of Disciplinary History**

During a Regular Review, an inmate's disciplinary history factor shall be reviewed to determine whether any change is warranted as per Section IV-D-1-a, Disciplinary Increases.  If a warranted change has not yet been initiated via an RD, that change may be done not more than six- (6) months after the eligibility for the increase, unless there have been further disciplinary reports. This reason must be clearly documented on the ICF.  **If the inmate has not been found guilty of a Class "A" or "B" disciplinary report under the Code of Penal Discipline A.D. 9.5, for one (1) calendar year (six (6) months for inmates under 18 yearS of age), a reduction of one level may be made to this factor.**

**4.      Review of Management Subcodes**

During a Regular Review, an inmate's management subcodes shall be examined to determine the appropriateness of the listed subcode(s).

**5.      Review of the Inmate Needs**

During a Regular Review, an inmate's need scores shall be re-assessed.   The following procedures are to be followed when reviewing each inmate:

**SECTION IV: RECLASSIFICATION PROCEDURES**

    a.    **Medical Factor - M score**

        Any inmate who has received an M-3 or higher score, shall be reviewed by medical staff prior to the Regular Review to determine whether an adjustment in the inmate's medical score is required.

        Medical staff shall inform classification staff at least one (1) week prior to scheduled completion of the Regular Review if there is a change in the inmate's medical care score. An inmate with an M-1 or M-2 score will not normally be reviewed by medical staff for reclassification purposes unless a medical condition is present which may affect the inmate's M-score, particularly when there would be an increase in this score.

    b.    **Mental Health Factor- MH score**

        Any inmate who has received a MH-3 or higher score shall be reviewed by mental health staff prior to the regular review to determine if an adjustment to the inmate's mental health score is required. **Mental health staff shall inform classification staff at least one week prior to scheduled completion of the Regular Review if there is a change in the mental health score.** An inmate with a score of MH-1 or MH-2 is normally not assessed by mental health staff for reclassification purposes unless a mental health condition is present that may affect the inmate's MH-score, particularly when there would be an increase in this score.

    c.    **Educational Factor - E score**

        Educational staff shall inform classification staff at least one week prior to the scheduled completion of the Regular Review if there is a change in the inmate's educational score. This generally refers only to an inmate who is participating in an educational program. An inmate with an E-score of 3 or higher who is identified as being unmotivated shall be interviewed by the counselor to determine if the inmate is now motivated to participate.

    d.    **Vocational/Work Skills Factor - V score**

        Vocational training staff shall inform classification staff at least one week prior to the scheduled completion of the Regular Reclassification Review if there is a change in the inmate's vocational training score. This generally refers only to an inmate who is participating in a vocational training program. An inmate with a V-score of 3 or higher who is identified as being

**SECTION IV: RECLASSIFICATION PROCEDURES**

unmotivated is interviewed by the counselor to determine if the inmate is now motivated to participate.

**e.  Substance Abuse Treatment Factor - T score**

Treatment staff shall inform the classification counselor at least one week prior to the scheduled completion of the Regular Reclassification Review if there is a change in the inmate's alcohol/drug needs score.  An inmate with a T-score of 3 or higher shall be referred to Addiction Services staff for an evaluation.  An individual's substance abuse in the facility may increase the substance abuse treatment factor. Successful completion of the appropriate level of treatment during this period of incarceration shall result in a review for reduction of the T-score by one level.

The rating cannot be reduced lower than a T-3 unless there was an error in the initial assessment.   The original rating should only be changed after assessment by an Addiction Services Supervisor or designee. Addiction Services Staff will document any change to the T- score in the Inmate's Master File.

**f.  Sexual Treatment Factor - S score**

Treatment staff shall inform classification staff at least one week prior to the scheduled completion of the Regular Reclassification Review if there is a change in the inmate's sexual offense treatment needs score. This refers only to an inmate with an S-score of 2 or higher.

**g.  Community Resources Factor- C score**

Classification staff shall review this factor to determine whether any changes have occurred in the inmate's community resources factor to warrant a change in C-score.  In addition, Classification Staff shall review the length of time remaining on the inmate's sentence to determine if a modification to the existing subcodes is necessary and to make a referral to Transition Services if appropriate.

**C.  NEW INFORMATION – (RI)**

A reclassification review shall be completed within 14 days of receipt of significant information that may affect an inmate's needs or risk scores.  This review does not necessarily result in the entire classification process being reviewed and may result in an increase, decrease or no change in the

**SECTION IV: RECLASSIFICATION PROCEDURES**

overall risk score.  (See also the increase and decrease sections that follow).

A RI shall be completed and signed by the Unit Administrator for all inmates under 18 years of age every three months.

A RI transaction shall be completed for all inmates "discharged and hold on Connecticut charges" within 14 days of the inmate's discharge. (Old current offense would now be history).

A RI is required when an inmate is designated or renounces SRG affiliation.

A RI shall be completed and signed by the Director O.C.P.M. or designee for all sentenced inmates assigned to Protective Custody in accordance with A.D. 9.9.

A RI shall be completed and signed by the Director O.C.P.M. or designee for all inmates assigned to Chronic Discipline in accordance with A.D. 9.4.

### 1. PAROLE – DISCRETIONARY & TRANSFER

A RI shall be completed within 14 days after all Board of Pardons and Paroles actions to include (but not limited to) Release Hearings, Rescission hearings/notifications, and Revocation Hearings.

An RI shall be completed within 14 days of a parole violator's return from the Community into the custody of the D.O.C.  Parole Violators shall be treated as serving the same period of incarceration.

The overall score of a Parole Violator returned with pending charges shall be determined by the length of time remaining on their sentence, the detainer risk score or escape score if applicable, whichever is greater.  Parole violators with a sex treatment need score greater than 1 shall not be classified below Overall level 3 without approval from the Commissioner/designee.

Parole Violators that previously paroled from a restrictive status shall be reviewed for continued restrictive status placement and the overall level will reflect prior restrictive status placement.

Parole Violators that previously paroled as level 4 offenders shall be reviewed by the Unit Administrator for appropriate facility placement.

Classification information on Special Parole Violators is located on Page 8 of this Manual.

### D.  OTHER CLASSIFICATION REVIEWS – (RD, RI, RC, RP)

An inmate's Overall Risk Level shall be reviewed at each Classification Review.  The following two sections outline the procedure for determining whether an inmate is to be considered for an increase

**SECTION IV: RECLASSIFICATION PROCEDURES**

or decrease in Overall Risk Level.

### 1. Increase in Overall Risk Level – (RD, RI)

Generally, one of two conditions result in an increase in an inmate's Overall Risk Level. These are comprised of serious or repetitive disciplinary violations (RD), or new information (RI) which would necessitate greater security than associated with the inmate's current Overall Risk Level. Inmate needs are not normally reviewed at this time.

### a. Disciplinary Increases  - (RD)

Behavior resulting in  disciplinary action may cause  an inmate's Overall Risk Level and Disciplinary History Factor to be increased. This increase will be reviewed in the following manner.l In the event of multiple disciplinary charges arising from a single disciplinary incident, only the highest chargeable class of offense shall be used. Reviews resulting in an Overall Level increase and requiring a transfer to another facility shall require the approval of the Population Management Unit.

5=   An inmate found guilty of:
   (1).   Direct/Intentional Assault resulting in serious injury on Department of Correction employee as defined in Administrative Directive 6.6, Reporting of Incidents, CN-6603.

   (2).   Hostage holding of a Department of Correction employee.

   (3).   Riot.

4=   (1).   An inmate who has been verified as a Security Risk Group member in accordance with Administrative Directive 6.14, who is found guilty of any of the following disciplinary offenses: creating a disturbance, assault, fighting, contraband A (possessing a dangerous instrument), impeding order, and security risk group safety threat member.

   (2).   An inmate found guilty of an Assault on DOC not resulting in serious injury as defined in Administrative Directive 6.6, Reporting of Incidents, CN- 6603.

   (3).   An inmate with an overall risk score of 4 or 3 who is found guilty under the code of Penal Discipline in accordance with the following schedule:

**SECTION IV: RECLASSIFICATION PROCEDURES**

3 or more Class A disciplinary reports within 120 days.

3 or more Class A/B combinations disciplinary reports within 90 days.
**\*\*This is not the same criteria utilized for CD review in accordance with AD 9.4\*\***
3 or more Class B disciplinary reports within 90 days

(4).  An inmate admitted to a Chronic Discipline Unit shall receive a disciplinary and overall risk factor of 4. (Requires Director OCPM/Designee signature).

3=  An inmate with an overall risk score of 2 who is found guilty under the Code of Penal Discipline in accordance with the previous schedule.

2=  An inmate with an overall risk score of 1 whose Community Release approval has been rescinded due to a guilty finding under the Code of Penal Discipline for a Class "A" or "B" disciplinary report.

Overall and Disciplinary History Risk Factors must be adjusted in a timely way. In the unlikely event that an inmate is not increased at the time they are eligible for an increase, then in no case should the increase take place more than six months after eligibility unless there have been further disciplinary sanctions. This six months factor is in effect regardless of whether or not there has been a break in incarceration. The criteria for CD review is outlined in AD 9.4, 'Restrictive Status'.

**b. Conviction of a Felony while Incarcerated  - (RI)**
Conviction of a felony committed while incarcerated shall result in a level increase review. An inmate's Overall Risk level shall not be increased to risk level 5 except as authorized by the Director of Offender Classification and Population Management as outlined in section 12(c) of A.D. 9.2., Inmate Classification.

An inmate convicted of a violent felony for a crime committed while incarcerated shall be assigned to Overall Risk Level 4 or reviewed for recommendation to Overall Risk Level 5 in accordance with A.D. 9.2, section 12(c) below.

**c. Assignment to Overall Risk Level 5  - (RD)**

Assignment to Administrative Segregation, Overall Risk Level 5, shall be considered when any totality of facts, information or circumstances which indicates an immediate threat to safety and/or security of the public, staff or other inmates.

## SECTION IV: RECLASSIFICATION PROCEDURES

An inmate shall be automatically placed in Administrative Detention and be reviewed for placement in Administrative Segregation, risk level 5, under any of the following conditions:

1.) Intentional/Direct assault on a Department of Correction employee resulting in serious injury as defined in Administrative Directive 6.6, Reporting of Incidents;

2.) Hostage holding of a Department of Correction employee;

3.) Riot;

4.) Homicide while confined;

5.) An inmate is sentenced to death; If an inmate is sentenced to death, a Restrictive Housing Hearing shall occur for placement on level 5/Death Row status. If an inmate was previously on level 5 status based on a pre-trial or presentence status for a Capital Felony Murder charge, another hearing shall occur based on the imposition of a sentence of death. Placement on level 5/Death Row is a different status than Administrative Segregation.

6.) Escape from the security perimeter of a facility;

7.) After one (1) year in Close Custody for Security Risk Groups; continues to present a threat to the safety, security, and/or orderly operation;

8.) After six (6) months in Close Custody for Chronic Discipline; continues to present a threat to the safety, security, and/or orderly operation;

9.) An inmate is in pretrial or pre-sentence status for a Capitol Felony Murder charge (C.G.S. 53a-54b);

All increases to Overall Risk Level 5 and/or assignment to Administrative Segregation shall be made by the Director of Offender Classification and Population Management.

### d. Security Risk Group Safety Threat Members - (RI)

Any inmate designated, by the Commissioner, as a Security Risk Group Safety Threat

## SECTION IV: RECLASSIFICATION PROCEDURES

Member shall be classified as an Overall Risk Level 4 and shall receive a SRG score of 4 in accordance with Section III.B.7 of this manual and placed in a close custody housing unit in accordance with Administrative Directive 6.14 Security Risk Groups.

An inmate released from the Department of Correction while designated as a Security Risk Group Safety Threat Member shall be readmitted on the same status.

The Director of Security shall review the designation in accordance with Administrative Directive 6.14 Security Risk Groups.

**e. Overall Risk Level Reclassification from Community Placement  - (RI)**

Risk Level increases for inmates remanded to custody and whose community transfer

has been revoked requires a reclassification hearing.  The Parole Manager/Designee shall provide facility staff with the reasons for an inmate's return via a copy of the disciplinary report (form CN9503), incident report (form CN6601) or 'Statement of Return' (form PCS5301) within two (2) business days.  Facility classification staff shall:

1).    Conduct a classification hearing with the inmate within three (3) business days of the re-incarceration.  This time limit may be extended for cause.

2).    Provide to the inmate at the hearing any documents pertaining to the reason(s) the inmate was re-incarcerated, unless the security of the facility or public warrants otherwise.  The inmate shall be given the opportunity to present any  mitigating factors resulting in their remand to custody.  A completed Classification Review Form (C-7), with the detailed reasons for his/her return to custody and the proposed risk level increase shall be presented to the inmate for signature.  A copy of the C-7 shall also be provided to the inmate.

3).    At the completion of the hearing the original C-7 and the Inmate Classification form shall be placed in Section 5 of the master file.  The hearing shall be documented on 'Offender Classification History Form'. (form CN9202)

4).    If the inmate is returned without prejudice, staff shall present and review the form with the inmate and have him/her sign the form. If the inmate refuses to sign the form this refusal shall be noted on the form. The staff member shall witness the inmate's signature and or lack thereof on the form. A copy shall be given to the

**SECTION IV: RECLASSIFICATION PROCEDURES**

inmate, one (1) returned to the parole officer and one (1) placed in the inmate's master file.

5). An inmate's overall risk level will be increased if it is determined he/she will not return to the community for whatever reason. The level increase will be based on the examination of any and all information available. In addition, the inmate may be transferred to a higher security facility.

6). A disciplinary hearing shall not substitute for a classification hearing. Records of the disciplinary hearing, including information provided by the inmate, shall be forwarded to the Counselor Supervisor or higher authority for appropriate action if necessary.

**f.  New Information - (RI)**

New information may result in an increase in the inmates overall risk score by increasing one of the factors. For example, receipt of a new pending charge, increase in length of sentence or designation as a verified Security Risk Group member, etc.

**2.  Decrease in Overall Risk Level - RC, RP, RI**

An inmate shall be reviewed for a Overall Risk level reduction based on (1) percentage of time served since the last Overall Risk level change, RP; (2) receipt of new information, RI and, (3) meeting the criteria for assignment to Overall Risk Level 1, RC.

**a. Overall Risk Level 5 Decrease - (RI)**
An inmate assigned to Overall Risk Level 5, Administrative Segregation, shall not be considered for Overall Risk Level decrease without the approval of the Commissioner. Inmates assigned to Administrative Segregation, shall be reviewed every 6 months for a possible Overall Risk Level decrease and removal from A/S status. Only favorable recommendations should be forwarded to the Director of Offender Classification and Population Management for review. Upon approval by the Director the Overall Risk Level shall be reduced to the appropriate Overall Risk Level 4 status, unless the inmate is on Death Row status.

**b. Percentage of Time Served – (RP)**
The percentage of time served toward the time remaining on the inmate's current period of incarceration since the last Overall Risk level score (R-score) change shall determine eligibility for consideration for a level reduction. If there has been no change (increase or decrease) in the Overall Risk score, since the establishment of the initial Overall Risk score, then the initial date will be used to determine percentage of

## SECTION IV: RECLASSIFICATION PROCEDURES

time. Where eligible, such level reductions are made at the discretion of the Unit Administrator. Inmates who complete a Restrictive Status Program (AS, SRGTM, SRG, CD, SN) will not be eligible to be considered for risk level reductions for six months following program completion.

Prior to approval for a percentage of time reduction classification staff shall check for consecutive sentences and shall check the accuracy of the computerized percentage of time calculation.

Percentage of time calculations for all escaped and absconded inmates shall be computed from the time of the escapee's return to the Department's jurisdiction.

Percentage of time calculations for all inmates returned on a Parole Violation shall be computed from the date of the violation return.

Any inmate with a pending charge or detainer may only be authorized a percentage of time reduction to the level of pending charge or detainer, except that if official documentation from another state exists which informs us that they will not extradite and the charge equates to a risk level 4, then the inmate may receive an "RP" reduction to overall risk level 3 (if all other criteria are met); the detainer score would remain a level 4.

Any inmate serving a sentence for a sex related offense or having a history of sex related offenses shall only be approved by the Commissioner or designee prior to being classified below Overall Risk Level 3. Only favorable recommendations by the Unit Administrator will be forwarded to the Director of Offender Classification and Population Management.

Any inmate designated as a verified Security Risk Group member shall not be classified lower than Risk Level 3 as long as the inmate remains so designated.

A sentenced inmate who refuses to participate in programs consistent with their Offender Accountability Plan (OAP), may be precluded from a classification reduction until the inmate complies with the OAP.

Decreases from Overall Risk Level 4 to 3 and Overall Risk Level 3 to 2 shall be reviewed and considered after a sentenced inmate has completed a prescribed amount of time in confinement, as noted below. Any inmate serving a life sentence with no possibility of parole or release is not eligible for a risk level decrease without the review and approval of the Director of Offender Classification and Population Management. The percentage of time served for determinate sentences is computed

**SECTION IV: RECLASSIFICATION PROCEDURES**

using the estimated release date for offenses committed prior to October 1, 1994 and the maximum release date for offenses committed after October 1, 1994, taking into account any retroactive and prospective RREC earned at the time of review, less any forfeitures. The percentage of time served for determinate sentences will be computed on the estimated release date for offenses committed prior to October 1, 1994, and on the maximum release date for offenses committed on or after October 1, 1994. The percentage of time served for indeterminate or indefinite sentences shall be computed on the projected discharge date. Parole status or eligibility shall be considered in inmate classification only when an inmate has been voted to parole. A firm VTP date is considered as the new discharge date for percentage of time reduction computations. If not approved, the reason for a denial of a level reduction shall be documented on the Inmate Classification Form (ICF). The schedule for risk level reductions review and eligibility criteria shall be followed, as noted below.

For inmates with multiple sentences from various jurisdictions, the percentage of time will be calculated on the total effective sentence from all jurisdictions. It does not matter whether or not the time was served in Connecticut first or last.

In the case of Interstate Compact transfer and Federal System transfer (CUSCOM) risk level reductions based on percentage of time served shall be determined from the inmate's initial date of sentence. Written facility recommendations for change, approved by the Unit Administrator or Designee, shall be sent to the Interstate Compact Supervisor or Designee. These recommendations should take into account Length of Confinement, Disciplinary History and Percentage of Time Served in the other jurisdiction. Recommendations will be forwarded by the Interstate Compact Office to the other jurisdiction for final approval.

Eligibility for consideration for a percentage of time reduction for Connecticut inmates initially classified during the implementation (7/89) of the Objective Classification System who have not had a prior level change shall be based on the initial sentence date.

An Overall level 4 inmate with more than fifteen- (15) years left to serve on a sentence shall not be reduced to an Overall level 3 without consulting with the Director of Offender Classification and Population Management/designee. An Overall level 3 inmate with more than seven (7) years left to serve on a sentence shall not be reduced to an Overall level 2 without consulting with the Director/designee as noted above.

**SECTION IV: RECLASSIFICATION PROCEDURES**

In addition, an inmate must not receive any Class A disciplines for the past 120 days or Class B for the past 90 days.

| Percentage of Time Level Reduction Chart | | | |
|---|---|---|---|
| Level | % of time served since last R-Score change | No Class "A" D/R's within past 120 days | No Class "B" D/R's within past 90 days |
| 4 to 3 | 35% | X | X |
| 3 to 2 | 30% | X | X |

To determine when an inmate is eligible for a percentage of time reduction, the following calculation shall be utilized:

1.   Time remaining on sentence since last R-Score change.

2.   Retro and prospective RREC minus any forfeitures at the time of review.

3.   Multiplied by (35% for level 4 or 30% for level 3)

This equals the period of time required to be served for eligibility

**Example 1:**

36 months (1096 days-RREC and forfeitures) from last R-score change to Estimated Release Date X .35 (level 4) = 384 (or less) days to serve to meet eligibility.

**Example 2:**

48 months ( 1461 days-RREC and forfeitures) from last R-score change to a firm Voted to Parole (VTP) Date X .30 (level 3) = 438 (or less) days to serve to meet eligibility.

**Community Release Programs  - (RC)**

**Community Release Programs include: Transitional Supervision, Dual Supervision, DUI/Drug Supervision (Home Confinement), Halfway House placement, Transitional Placement, Coordinated Community Release and Re-entry Furlough.**

## SECTION IV: RECLASSIFICATION PROCEDURES

The Community Release programs provides eligible offenders an opportunity to reintegrate into the community. Program placement may include assignment to Community Supervision or Residential Programs. Supervision plans are developed for each offender participating in community release programs. Transitional Supervision, Dual Supervision, Transitional Placement and Re-entry Furloughs provide the offender greater freedom. Residential Programs have a more structured environment. They typically create more demands of accountability creating a greater risk of a Community Release Program failure as opposed to other forms of community release.

An "RC" transaction shall be initiated for all eligible inmates and the ICF documenting the action taken shall be placed in the Inmate's Master File. This review shall include and fulfill all requirements for a Regular Review. A Community Release Program Package shall be completed for each eligible inmate. Strict adherence to the order in Attachment C will ensure package uniformity throughout the Department. Once completed, a copy of the package shall be filed in Section Five of the inmate's master file.

A sentenced inmate who refuses to participate in programs consistent with the Offender Accountability, may be excluded from community release consideration until the inmate complies with the OAP.

A member of a Security Risk Group in accordance with Administrative Directive 6.14, Security Risk Groups, shall be excluded from Community Release consideration.

Inmates who are currently incarcerated on a Special Parole violation and have a term of commitment from the Board of Pardons and Paroles shall not be eligible for Transitional Supervision or Halfway House release unless the term of commitment ends or the inmate has reached their Voted to Parole date. Inmates may be reviewed prior to either date (refer to the MOU between the DOC and the BOPP concerning Dual Supervision).

If an inmate's Instant Offense involves domestic violence in a spousal/significant other relationship and the inmate has participated in a facility based domestic violence group, the Understanding Domestic Violence Program Evaluation Form (Attachment C- 9), shall be filled out and included as part of the inmate's community release package as noted on Attachment C, the Community Release Package Checklist.

## SECTION IV: RECLASSIFICATION PROCEDURES

If an inmate does not have enough time remaining to serve on their sentence, lacks a sponsor or is not interested in placement on Community Release, an abbreviated package shall be completed and placed in the inmate's Master file.

Prior to approval for Community Release, the Victim Notification form titled Inmate Notice of Application, JD-VS-3, shall be forwarded to the Office of Victim Services Judicial, 225 Spring Street Wethersfield, CT 06109 and a copy shall be forwarded via interdepartmental mail to the Department of Correction Victim Services Unit, 24 Wolcott Hill Road, Wethersfield, CT 06109. A copy of this form shall also be maintained in section five of the inmate's Master File.

## TRANSITIONAL SUPERVISION

Classificaiton staff shall not initiate the Transitional Supervision package until 120 days prior to the offender's eligibility date. When an inmate is not recommended for placement on Transitional Supervision, the T/S package shall be forwarded with the original ICF to the appropriate District Administrator's Office for review. The appropriate District Administrator shall review the decision and affirm it or establish a placement date. If a placement date is established, the District Administrator shall notify the Unit Administrator of the facility housing the inmate and the Parole and Community Services Unit.

**Criteria:**

An inmate with a total effective sentence of two years or less shall, subject to the following criteria, be eligible for consideration for Transitional Supervision (TS). The two year maximum sentence shall include any unpaid fine calculated consecutively at the current cost of incarceration per day. Contact your facility Records Specialist for the current cost.

1. Must not be classified Level 5;

2. Must have served not less than 50% of the sentence imposed minus jail credit and any earned RREC, add any forfeitures of RREC at the time of review.

3. Must not be serving mandatory portion of Driving While Intoxicated (Connecticut General Statute 14-227(a) or driving under suspension offense that originally was related to Driving While Intoxicated (Connecticut General Statute 14-215(c) sentence;

4. Must not have been found guilty of a Class A disciplinary report within

**SECTION IV: RECLASSIFICATION PROCEDURES**

120 days (May be waived at the discretion of the Unit Administrator).

5. Must not have been found guilty of a Class B disciplinary report within 60 days, may be waived at the discretion of the Unit Administrator;

6. Remain escape free from any Community Release program, to include absconding from parole, during the preceding 120 days, may be waived at the discretion of the Unit Administrator;

7. No pending charges or detainers unless bond has been posted except pending out of state charges below risk level 4 with official documentation that the state will not extradite;

8. Must not be a Designated a Security Risk Group Member;

9. Must have an approved sponsor and/or have secured housing at an acceptable residence approved by Community Services.

10. Can be serving a Special Parole commitment and also be TS eligble pursuant to Dual Supervision.

11. Favorable recommendations for inmates with a sex offense treatment need score greater than 1 shall be forwarded to the Director of Offender Classification and Population Management for review and approval in consultation with appropriate Mental Health staff;

12. Favorable recommendations for inmates with mental health need scores greater than 3 shall be forwarded to the facility Medical and Addiction Services Units for approval to further ensure continuity of care.

13. Inmates who would normally be approved for Transitional Supervision but lack a sponsor, can be placed in the community with a verifiable job and residence.  Community Services will adjust reporting times accordingly;

14. Inmates who are eligible for Transitional Supervision but the potential sponsor has previous criminal convictions can be approved for Transitional Supervision provided the sponsor has no pending criminal charges or warrants.

**SECTION IV: RECLASSIFICATION PROCEDURES**

**Review Process:**

1. All attempts should be made by the facility caseload counselor to verify the potential sponsor's willingness to accept the inmate in the community. The counselor shall do this by completing the PCS 4102 Sponsor Questionnaire Verification Form located in the Appendix and include it in the TS package.

2. Police Reports shall be requested for all instant offenses and violent offenses within the past five (5) years. All requests for Police Reports shall be documented in the inmate's master file on the Inmate Classification Hidtory Form. In the event, the sentenced offender is transferred before the Police Report is received, the originating facility shall make every attempt to collect the police report and forward it to the receiving facility. If a police report is not received two weeks prior to the TS eligibility date, the TS package should be forwarded for review and decision made without the report.

**Approval/Denial Process:**

1. Community Release classification transactions shall be recorded on the Inmate Classification History Form (CN9701) at the final decision of facility Unit Administrator. The decision shall be recorded as approved or denied.

2. The RC line shall be opened and finalized once the Unit Administrator makes a final decision for TS placement. If TS is approved, a TS subcode and hold date shall be entered on the RT77.

3. If the TS package is denied, it shall be forwarded to the District Administrator's Office for review. If the TS denial is continued by the District Administrator, the denial is then forwarded to the Director of Programs and Treatment/Designee for review. Once a decision is reached another RC line will be opened and finalized by the Director of Programs and Treatment/Designee.

4. Inmate must submit to Felony DNA requirements if applicable.
   **Upon approval, not prior to 120 days from their TS eligibility date, an offender shall be classified to Overall Risk Level 1.**

5. An inmate approved for Transitional Supervision, but with a contingency that he/she complete a particular treatment program prior to release, shall have a TS subcode and shall not be reduced to an overall level 1 until the stipulated program has been completed.

## SECTION IV: RECLASSIFICATION PROCEDURES

6.    An RI shall be conducted on any inmate whose approval for Transitional Supervision has been rescinded prior to the inmate's release.  The inmate shall be returned to the overall level prior to the RC transaction unless new information received requires that the overall risk level be higher than the prior overall risk score.

**Time Computation Formula**

The following time computation formula shall be utilized when determining the eligibility date for transitional supervision, regardless of date of offense.

Step 1: Determine number of days in the sentence.  (See chart, Attachment A)

Step 2: Divide the total number of days by two-(2). (See chart, Attachment A)

Step 3: Deduct Jail Credit and earned RREC.

Step 4:  Add any forfeitures of RREC.

Step 4: Add the result from Step 3 to the date of the sentence to determine the actual eligibility date.

## SECTION IV: RECLASSIFICATION PROCEDURES

**EXAMPLE:**

| | |
|---|---|
| Step 1: 1 Year Sentence | 365 days |
| Step 2: 365 Divided by 2 | 183 days |
| Step 3: Minus JC + RREC | - 80 days JC<br>-25  days RREC |
| Step 4:  Add RREC forfeiture: | +25 forfeited days |
| The Result is: | 103 <u>days</u> |
| Step 5: Add Result to Date of Sentence | DOS + 103 Days=Eligibility Date |

An inmate with any sentence imposed which is equal to or less than 2 years is eligible for T/S consideration.

## SECTION IV: RECLASSIFICATION PROCEDURES

An inmate with any number of concurrent sentences is eligible for T/S, regardless of date of imposition and aggregate time, as long as none of these sentences are greater than 2 years. Percentage of time requirements should be computed on the Controlling Sentence in this instance.

The 50% criteria shall be applied to the aggregate sentence for sentences with consecutive terms and calculated from the first sentencing date.

## RESIDENTIAL PROGRAM PLACEMENT

Criteria:

An offender shall be eligible for transfer to a residential work or education program placement when the following criteria are met:

1.      Must be classified Level 2 or 3 (**Prior to Approval**) ;

2.      Must be within 18 months of Estimated Discharge Date or Voted to Parole Date;

3.      Must not be serving mandatory portion of Driving While Intoxicated (Connecticut General Statute 14-227(a) or driving under suspension offense that originally was related to Driving While Intoxicated (Connecticut General Statute 14-215(c) sentence;

4.      Must not have been found guilty of a Class A disciplinary report within 120 days, may be waived at the discretion of the Unit Administrator;

5.      Must not have been found guilty of a Class B disciplinary report within 60 days, may be waived at the discretion of the Unit Administrator;

6.      No escape or return from escape, to include absconding from parole, within the past 6 months, may be waived at the discretion of the Unit Administrator;

7.       No Community Release program failures during the preceding 120 days, may be waived at the discretion of the Unit Administrator;

8.      No pending charges, except for those out of state charges below risk level 4 with official documentation that the state will not extradite, or unless

## SECTION IV: RECLASSIFICATION PROCEDURES

bond has been posted;

9. Must not be a Designated Security Risk Group Member;

10. Favorable recommendations for inmates with a sex treatment need score greater than 1 shall be forwarded to the Director of Offender Classification and Population Management for review and approval in consultation with appropriate Mental Health staff;

11. Must submit to Felony DNA requirements if applicable.

**Approval/Denial Process**:

1. Upon approval, an offender shall be classified to an Overall Risk Level 1. The RC line shall be opened and finalized once the Unit Administrator makes a final decision for HWH placement. If HWH is approved, a HWH subcode and hold date shall be entered on the RT77.

2. If the HWH package is denied and the inmate has a firm VTP date, the package shall be forwarded to the District Administrator's Office for review. Another RC line will be opened and finalized by the District Administrator's Office, denoting approval or denial.

3. An inmate approved for Residential Program Placement, but with a contingency that he/she complete a particular treatment program prior to release shall have a HW subcode and shall not be reduced to an overall level 1 until the stipulated program has been completed.

4. For CUSCOM inmates, written facility recommendations for Residential Program Placement, approved by the Unit Administrator or Designee, shall be sent to the Interstate Compact Supervisor or Designee. These recommendations should take into account, Length of Confinement, Disciplinary History and Percentage of time served in the other jurisdiction. Recommendations will be forwarded by the Interstate Compact Office to the other jurisdiction for final approval.

## COORDINATED COMMUNITY RELEASE

All inmates with a sex treatment needs score of a 1 who are voted to parole with a residential stipulation will automatically be approved for halfway house placement in accordance with

**SECTION IV: RECLASSIFICATION PROCEDURES**

the Memorandum of Understanding between the DOC and the BOPP, by their assigned institution based on an **RC** reducing the inmate's overall score to Level 1. The Unit Administrator will sign a Community Release Cover Sheet (C-1), checking the box titled **"COORDINATED COMMUNITY RELEASE BASED ON VTP STATUS"**. The coordinated community release approval date will be the date the C-1 is signed by the Unit Administrator. In lieu of providing the inmate with a C-7, the C-1 will be forwarded to the inmate as notification of the approval. Any issues/questions regarding the approval of a specific package by the Unit Administrator shall be directed to the District Administrator for review. Further information concerning the MOU is located in the Appendix.

**INTENSIVE PROBATION SUPERVISION:** Refer to protocol located in the Appendix.

**PRETRIAL SUPERVISION**

Criteria:

A pretrial offender shall be eligible for pretrial supervision when the following criteria are met:

1. Pretrial confinement for no offense other than Class D Felony or Misdemeanor. The following Class D Felonies are <u>excluded from consideration</u>:

   a) 53a-60a - Assault in the second degree with a firearm

   b) 53a-60b - Assault on a victim 60 or older, second degree

   c) 53a-60c - Assault on a victim 60 or older, with a firearm

   d) 53a-60d - Assault in the second degree, with a motor vehicle

   e) 53a-72a - Sexual Assault in the third degree

   f) 53a-73a - Sexual Assault in the fourth degree

   g) 53-181c - Stalking in the first degree

2. No community release violation during the preceding 120 days, may be waived at the Unit Administrator's discretion;

3. Must not have been found guilty of a Class A disciplinary report within 120 days, may be waived at the Unit Administrator's discretion;

## SECTION IV: RECLASSIFICATION PROCEDURES

4.   Must not have been found guilty of a Class B disciplinary report within 60 days, may be waived at the Unit Administrator's discretion;

5.   No escape or absconder status within the past 6 months;

6.   Favorable recommendations for inmates with mental health need scores greater than 3 shall be forwarded to the Director of Health and Addiction Services for approval and to further ensure continuity of care.

UPON APPROVAL AN OFFENDER SHALL BE CLASSIFIED TO OVERALL RISK LEVEL ONE (1).

**SUPERVISION LEVEL FOR PRETRIAL OFFENDERS**

Any pretrial offender assigned to overall risk level 1 shall be supervised by electronic monitoring or any other monitoring technology or services while on pretrial supervision. A pretrial release agreement shall specify: (1) the inmate must not change residence without prior approval of the supervising officer,  (2) the inmate must appear for all court appearances as required, (3) the inmate must participate in substance abuse programming if required by the Department of Correction and (4) the inmate must participate in any other conditions imposed by the Department of Correction.

## SECTION V: OTHER CLASSIFICATION ACTIONS

## A.  OUTSIDE WORK ASSIGNMENTS, FACILITY BASED WORK RELEASE AND EDUCATIONAL RELEASE

The Unit Administrator shall be the approving authority for any inmate placed on facility-based outside clearance, community service work detail, work release or education release based on the following minimum eligibility criteria:

1.      Overall Risk level 1 or 2;

2.      No sex treatment need score greater than 1;

3.      No level 4 convictions, past or current offense;

4.      Mental Health and Medical need scores less than three (3) unless cleared by Health Services;

**SECTION V: OTHER CLASSIFICATION ACTIONS**

     5.      Within 36 months of end of sentence or voted to parole date;

     6.      No return from escape or from Parole Absconding within 1 year;

     7.      No Class A disciplinary reports within 120 days and no Class B disciplinary reports within 60 days;

     8.      No detainer score greater than 1;

     9.      Review inmate's special management information; and

     10.    No history of classification as an overall risk level 5.

Any inmate already approved or being considered for outside clearance, who has been denied or has returned from any discretionary release program, such as community release or parole within the last 30 days, shall be evaluated by the Unit Administrator to assess the appropriateness of an outside work assignment.  Once an inmate is approved for Outside Clearance, an RI shall be run to add the OC Management subcode on the RT77.

Any inmate already approved for outside clearance that has received a disciplinary report or has been involved in any incident shall also be evaluated by the Unit Administrator for continued placement on outside clearance.

For CUSCOM inmates, written facility recommendations for Outside Work Assignment, approved by the Unit Administrator or Designee, shall be sent to the Interstate Compact Supervisor or Designee.  These recommendations should take into account, Length of Confinement, Disciplinary History and Percentage of time served in the other jurisdiction. Recommendations will be forwarded by the Interstate Compact Office to the other jurisdiction for final approval.

**B.  FURLOUGH COMPUTATION FORMULA**

The following formula shall be utilized in conjunction with the eligibility criteria in Administrative Directive 9.8, Furloughs, when determining furlough eligibility. Re-entry furloughs may be approved for a period of up to forty-five days in length.

For offenses committed on or after 10/1/94, follow steps 1, 2, 3 (Jail Credit ONLY - JCGT does not apply) and 7 only.

     Step 1: Determine the number of days in the sentence. (or number of days from date of sentence to VTP date)

**SECTION V: OTHER CLASSIFICATION ACTIONS**

Step 2: Multiply the number of days by .40 (or use days from attachment B)

Step 3: Deduct jail credit or jail credit good time, or RRE.

Step 4: Deduct Outstanding Meritorious Performance Award - Good Time (if any) from result in Step 3.

Step 5: Deduct seven (7) day Job Credit (if any) from result in Step 4.

Step 6: Multiply the result by .75 (this adjusts for Statutory Good Time to be earned)

Step 7: Add the result to the date of sentence to determine the furlough eligibility date.

Step 8: Add any forfeited Good Time or RREC (if any) to the eligibility date.

For CUSCOM inmates, written facility recommendations for Furlough, approved by the Unit Administrator or Designee, shall be sent to the Interstate Compact Supervisor or Designee. These recommendations should take into account, Length of Confinement, Disciplinary History and Percentage of time served in the other jurisdiction. Recommendations will be forwarded by the Interstate Compact Office to the other jurisdiction for final approval.

EXAMPLE:

Step 1: 1 year sentence              365 days

Step 2: Multiply by .40              146 days

Step 3: Deduct JC, JCGT or RREC   - 10 days

Step 4: OMPA - Good Time          - 30 days

Step 5: Seven (7) day Job Credit     -10 days

Step 6: Multiply by .75              x .75

Step 7: Add result to date of sentence 72 days

Step 8: Add forfeited Good Time or RREC 5 + 72 = 77 days

Date of sentence + 77 days = Eligibility Date

**SECTION V: OTHER CLASSIFICATION ACTIONS**

The 40% criteria shall be applied to the total aggregated time to serve on the present incarceration regardless of the type of sentence or sentences (concurrent or consecutive), adjusted for time credits or debits.  Any inmate returned from community supervision of any kind shall not be eligible for furlough until 40% of the remaining period of incarceration has been served from the date of re-incarceration.

**C.  INDETERMINATE SENTENCES**

The Commissioner may release any inmate sentenced to an indeterminate sentence pursuant to Connecticut General Statutes 21a-277(d) or 21a-279(e) at any point during that sentence.  The Unit Administrator may recommend release at any time during the sentence.  Favorable recommendations shall be forwarded to the Commissioner's Office via the Director of Offender Classification and Population Management.

The initial review shall be made after the completion of Initial Classification and a 30-day period of confinement.  If denied, the Unit Administrator shall set another review date no more than six (6) months from the decision date. Each review and disposition shall be documented on the Inmate Classification History Form in section 5 of the Master File.

**Any exception to the provisions of this Manual require the written approval of the Commissioner/Designee.**



State of Connecticut
# Judicial Branch

## Pending Case Detail

*Information is accurate as of May 16, 2020 04:50 AM*

**Defendant Information**

| | |
|---|---|
| Last, First: HURDLE MARCUS | Represented By: 432408 JR HARDY |
| Birth Year: 1968 | Times on the Docket: 27 |

**Docket Information**

| | |
|---|---|
| Docket No: A22M-CR18-0097218-S | Arresting Agency: LOCAL POLICE WEST HAVEN |
| Companion: A22M-MV18-0056594-S | |
| Program: | Arrest Date: 10/24/2018 |
| Court: Milford GA 22 | Bond Amount: $100,000 (This case only) |
| | Bond Type: Set |
| Miscellaneous: | (Not Released From Custody) |

| Activity: Awaiting Disposition | Next Court Date: 6/9/2020 10:00 AM |
|---|---|

**Current Charges**

| Statute | Description | Class | Type | Deg. | Offense Date | Plea | Verdict/Finding |
|---|---|---|---|---|---|---|---|
| 53a-63 | RECKLESS ENDANGERMENT 1ST DEG | A | Misdemeanor | 1 | 8/16/2018 | Not Guilty | |
| 53a-167a | INTERFERE WITH OFFCR/RESISTING | A | Misdemeanor | 1 | 8/16/2018 | Not Guilty | |
| 14-223(b)** | ENGAGING POLICE IN PURSUIT | | | 1 | 8/16/2018 | Not Guilty | |
| 14-222 | RECKLESS DRIVING | | | 1 | 8/16/2018 | Not Guilty | |

Register with Connecticut Statewide Automated Victim Information and Notification (CT SAVIN)
CT SAVIN is a free, confidential service that gives crime victims and members of the community information about an offender's court case.



Back

Attorneys | Case Look-up | Courts | Directories | Educational Resources | E-Services | FAQ's | Juror Information | Media | Opinions | Opportunities | Self-Help | Home

Common Legal Terms | Contact Us | Site Map | Website Policies

Copyright © 2020, State of Connecticut Judicial Branch



## Pending Case Detail

*Information is accurate as of May 16, 2020 04:50 AM*

**Defendant Information**

| | | | |
|---|---|---|---|
| Last, First: HURDLE MARCUS | | Represented By: 432408 JR HARDY | |
| Birth Year: 1968 | | Times on the Docket: 27 | |

**Docket Information**

| | | | |
|---|---|---|---|
| Docket No: | A22M-MV18-0058594-S | Arresting Agency: | LOCAL POLICE WEST HAVEN |
| Companion: | A22M-CR18-0097218-S | | |
| Program: | | Arrest Date: | 10/24/2018 |
| Court: | Milford GA 22 | Bond Amount: | $0 (this case only) |
| | | Bond Type: | Promise to Appear |
| Miscellaneous: | Substituted Charges | | (Released From Custody) |
| Activity: | Awaiting Disposition | Next Court Date: | 6/9/2020 10:00 AM |

**Current Charges**

| Statute | Description | Class | Type | Deg. | Offense Date | Plea | Verdict / Finding |
|---|---|---|---|---|---|---|---|
| 14-223(b)** | ENGAGING POLICE IN PURSUIT | | | 1 | 8/16/2018 | Not Guilty | |
| 14-222 | RECKLESS DRIVING | | | 1 | 8/16/2018 | Not Guilty | |
| 53a-63 | RECKLESS ENDANGERMENT 1ST DEG | A | Misdemeanor | 1 | 8/16/2018 | Not Guilty | |
| 53a-167a | INTERFERE WITH OFFCR/RESISTING | A | Misdemeanor | 1 | 8/16/2018 | Not Guilty | |

Register with Connecticut Statewide Automated Victim Information and Notification (CT SAVIN)
CT SAVIN is a free, confidential service that gives crime victims and members of the community information about an offender's court case.



Attorneys | Case Look-up | Courts | Directories | Educational Resources | E-Services | FAQ's | Juror Information | Media | Opinions | Opportunities | Self-Help | Home

Common Legal Terms | Contact Us | Site Map | Website Policies

Copyright © 2020, State of Connecticut Judicial Branch






## **CERTIFICATION**

I herby certify that on May 19, 2020 a copy of the foregoing was filed electronically.

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic

filing system.  Parties may access this filing through the Court's system.


_James W. Donohue_

James W. Donohue
Assistant Attorney General